Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9500
Facsimile: (310) 595-9501

Jonathan F. Cohn (*pro hac vice*)
jfcohn@sidley.com
Joshua J. Fougere (*pro hac vice*)
jfougere@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

*Attorneys for Defendants*
*Bayer HealthCare LLC and Bayer Corporation*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAMILLE CABRERA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BAYER HEALTHCARE LLC and BAYER CORPORATION,<br><br>Defendants. | Case No. 2:17-cv-08525 JAK (JPRx)<br><br>**CLASS ACTION**<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Date: April 16, 2018<br>Time: 8:30 a.m.<br>Place: Courtroom 10B<br><br>Assigned to: Hon. John A. Kronstadt |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants Bayer HealthCare LLC and Bayer Corporation (collectively, "Bayer") hereby respectfully submit this Reply to Plaintiff Camille Cabrera's ("Plaintiff") Opposition to Defendants' Motion to Dismiss.

**INTRODUCTION**

Plaintiff's claim is manifestly implausible. "[I]t is implausible that a purchaser would not look at the label to see what vitamins are included and in what quantity." *Goldman v. Bayer AG*, No. 17-cv-0647, 2017 WL 3168525, at *7 (N.D. Cal. July 26, 2017). It is also implausible that he/she would be deceived by a label that "tells a reasonable consumer everything he/she needs to know." *Id.* And it is implausible that the consumer would reasonably believe that a multivitamin contains "all" of the dozens of vitamins on the planet—and not just the ones on the label—merely because the brand name includes the word "Complete."

Plaintiff alleges no facts supporting her position. She does not allege, for instance, that a single multivitamin in any store anywhere contains "all" the vitamins. She does not allege that any multivitamin manufacturer uses the word "Complete" to refer to "all" the vitamins. And she does not even allege that the word "Complete" is universally understood to refer to "all" of something.

Nor could she. A complete diet, for example, does not mean it contains "all" the foods in existence, just like a complete course-load does not mean the student is taking "all" the classes her school has to offer. Plaintiff's complaint is premised on a made-up universal definition of the word "Complete" that simply does not exist.

Moreover, there are "many different brands and formulas" of multivitamins, and a reasonable consumer looks at the label—specifically, the Supplement Facts section—to determine what is in a multivitamin product. *Goldman*, 2017 WL 3168525, at *6. Because the label for Flintstones™ Gummies Complete Children's Multivitamin Supplement plainly discloses the vitamins in the product, it is not deceptive. This Court should grant the motion to dismiss.

## ARGUMENT

### I. THE CALIFORNIA STATUTORY CLAIMS SHOULD BE DISMISSED.

#### A. The California Statutory Counts (1-3) Under the CLRA, UCL, and FAL Fail to State a Claim.

Plaintiff does not and cannot dispute that the Supplement Facts section identifies—in clear font—the particular vitamins and amounts that are in Flintstones™ multivitamins. So Plaintiff stakes out an extreme position, which she cannot defend. According to Plaintiff, a reasonable consumer would disregard the list of vitamins on the Supplement Facts section and instead think—based solely on the word "Complete"—that each gummy contains "all" the vitamins in existence.

But Plaintiff cannot justify this implausible conclusion. First, a reasonable consumer would "look at the label to see what vitamins are included and in what quantity." *Goldman*, 2017 WL 3168525, at *7. Multivitamin products are sold in countless different formulations, so a reasonable consumer "would not purchase multivitamins before determining what vitamins were in the formulation." *Id*.

Second, the label does not state that it contains "all the vitamins" in existence. And Plaintiff alleges no facts supporting her implausible interpretation of the brand name. It would be one thing if other vitamin manufacturers used the word "Complete" to refer to "all" the vitamins; or if other manufacturers even made multivitamin products that contained "all" the vitamins, of which there are dozens. But Plaintiff does not allege any of that. (In fact, she presumably knows that multivitamin labels routinely use the word "Complete" when the product contains the same vitamins in Flintstones™ Gummies or some other subset of "all" the vitamins.)

Instead, the *only* asserted reason for why reasonable consumers would think the word "Complete" means "all" the vitamins in existence is Plaintiff's own say-so. Opp. 6 (citing Compl. ¶¶ 1-3, 5). Plaintiff's opposition brief cites one

definition of "complete" as "having all necessary parts, elements, or steps." Opp. 4, 6 (citing Merriam-Webster). But "all necessary parts" is not the same as "all parts," which no doubt is why the dictionary's own example of a "complete diet" does not mean a diet of "all" foods. Another dictionary provides as an example a "complete" wardrobe, which does not contain "all" clothes. Plaintiff offers no basis for her implicit assumption that all of the dozens of vitamins in existence are "necessary" for all multivitamins—a proposition which, if true, would call into question every multivitamin on store shelves.

Plaintiff's bald assertions about the meaning of "Complete" are legally insufficient. *See, e.g.*, *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 979-80 (C.D. Cal. 2013). Courts have dismissed comparable allegations when plaintiffs have failed to advance a definition "that is shared by the reasonable consumer." *Id.*; *Rooney v. Cumberland Packing Corp.*, No. 12-cv-0033, 2012 WL 1512106, at *4 (S.D. Cal. Apr. 16, 2012) (dismissing as implausible plaintiff's alleged belief about the meaning of "Sugar in the Raw" brand name when plaintiff's own interpretation appeared "[n]owhere on the box" and was "unsupported"); *Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 877 (2017) (affirming dismissal of complaint alleging what "reasonable consumers believe" about brand name when the complaint "allege[d] no facts showing this [assertion] to be true" and when reasonable consumers "would [] inspect" the products before buying them). In a similar vein, courts often refuse to project plaintiffs' own illogical interpretations of labels onto the "reasonable consumer." *See, e.g.*, *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) (no reasonable consumer deceived by "'Original' and 'Classic' descriptors" on ice cream label); *Welk v. Beam Suntory Import Co.*, 124 F. Supp. 3d 1039, 1044 (S.D. Cal. 2015) ("reasonable consumer wouldn't [define] 'handcrafted' on a bourbon bottle to mean that the product is literally 'created by a hand process rather than by a machine").

This Court should follow suit because the conclusory allegations fail as a matter of law.

The cases on which Plaintiff relies are inapposite. First, *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008), and its progeny lend Plaintiff no support. As the Ninth Circuit recently explained, "*Williams* stands for the proposition that *if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." *Ebner v. Fresh Inc.*, 838 F.3d 958, 967 (9th Cir. 2016); *see also Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012); *see also Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1036-37 (N.D. Cal. 2015). The product at issue in *Williams* was titled "fruit juice snacks," and the front of the package included pictures of fruit that were not in the product and the words "all natural" even though the ingredients were not all natural. *Williams*, 552 F.3d at 936, 939; *Ebner*, 838 F.3d at 966. That was deemed deceptive.

Here, by contrast, the label is not deceptive. Bayer does not represent that the product contains "all of the vitamins." Even if the word "Complete" were ambiguous, any alleged ambiguity that is clarified by the label as a whole *is not deceptive*. *See, e.g.*, Mot. 5-6 & n.1 (citing cases); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). Because the Supplement Fact section (which is by no means "fine print") makes clear precisely what vitamins are in the product, the label as a whole is not deceptive. *Williams* is inapposite.

So is *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, No. 17-cv-541, 2017 WL 3313963 (W.D. Wash. Aug. 3, 2017), the unpublished, out-of-circuit decision on which Plaintiff heavily relies. The premise of that decision was that the package label said the box-set contained "all" the James Bond movies. A consumer would thus reasonably think that the box contained "all" the movies. The list of 23 films on the back did not cure the deception because a reasonable consumer might not know that this long list excluded two movies (*Casino Royale* and *Never Say Never*

*Again*). *Id.* at *2. As a result, a consumer could be misled, and if he wanted "all" the movies, he would still have to go out and buy the other two for "an additional $69.37 plus tax and shipping." *Id.*

This case is different. There is no comparable promise of "all" the vitamins and thus no comparable deception. Again, Plaintiff is just assuming—based on her own *ipse dixit*—that a reasonable consumer would misconstrue the brand name and think that the gummies contain all of the vitamins. Moreover, unlike in *Johnson*, there is no discernible harm here. Plaintiff does not allege that once she learned the Flintstones™ Gummies were missing vitamins, she had to purchase the other vitamins or suffered some other kind of harm. Indeed, the Flintstones™ Gummies provided her precisely what was on the label—a broad array of numerous vitamins, helping her meet her recommended daily amounts.

Because the label does not say it provides "all" vitamins, moreover, there is no need to identify the vitamins that are not included. In any event, the FDA dictates what is on a multivitamin's Supplement Facts panel, and Plaintiff identifies no multivitamin product that lists what vitamins are excluded. Plaintiff's allegations are simply nothing like *Johnson*'s.

### B. Counts 4 and 5 Fail to State a Claim for Breach of Express or Implied Warranty.

Plaintiff's express warranty claim fails for the same reasons her statutory claims fail. Mot. 4-8. Plaintiff simply repeats her same arguments, including the entirely unsupported claim that the label must list the vitamins that are *not* included. Opp. 15-16. These points are no more persuasive in this setting.

In addition to the implausibility of Plaintiff's core theory, Bayer also explained that the implied warranty claim fails because she has not alleged privity with Bayer. Mot. 8. Plaintiff contends that she need not show privity because she is an "intended third-party recipient" of the warranty between Bayer and the retailer. Opp. 16 (citing cases). But her complaint does not allege that she is a

"third-party recipient" of any warranty, Compl. ¶¶ 83-91, and it likewise does not allege that there is any "agreement" or "contract" between Bayer and retailers to which she could possibly be a third-party beneficiary. Counts 4 and 5 should be dismissed.

## II. THE COMMON LAW CLAIMS (6-9) SHOULD BE DISMISSED.

Plaintiff seemingly agrees that her summarily-pled common law claims fail for the same reasons as the others. Mot. 8; Opp. 16-18. The Court need not go any further to dismiss them.[1]

## III. THE COURT SHOULD HOLD THAT THERE IS NO PERSONAL JURISDICTION WITH RESPECT TO NON-CALIFORNIA PURCHASERS.

Plaintiff does not dispute that there is no general jurisdiction over Bayer in California but asserts that there is specific jurisdiction over non-California purchasers merely because the Supreme Court in *Bristol-Myers Squibb Co. v. Superior Court of California,* 137 S. Ct. 1773 (2017), did not affirmatively address personal jurisdiction in the context of federal courts. *See* Opp. 18-19. That is wrong. The Supreme Court in *Bristol-Myers Squibb* holds that there is no personal jurisdiction over non-resident purchasers for sales outside California, and the majority of *federal* district courts agree that its holding applies equally to them.[2] At

---

[1] Because the complaint does not satisfy Rule 8, *Iqbal*, and *Twombly*, it necessarily follows that it also does not satisfy the particularity requirements of Rule 9(b). Those inadequacies are especially stark for the threadbare claims of intentional wrongdoing, like knowing fraud (Count 6) and intentional misrepresentation (Count 7). Compl. ¶¶ 92-107. These claims should dismissed no matter what.

[2] *See Dyson v. Bayer Corp.*, No. 17-cv-2584, 2018 WL 534375, at *5 (E.D. Mo. Jan. 24, 2018) (dismissing non-Missouri plaintiffs' claims for lack of personal jurisdiction in products liability case brought by 95 plaintiffs, only 3 of whom resided or were allegedly harmed in Missouri); *LDGP, LLC v. Cynosure, Inc.*, No. 15 C 50148, 2018 WL 439122 (N.D. Ill. Jan. 16, 2018) (holding that court does not have personal jurisdiction over defendants with regard to claims asserted by non-resident plaintiffs); *McDonnell v. Nature's Way Prods., LLC*, No. 16 C 5011, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) (finding no jurisdiction where non-resident

(Footnote continues on next page.)

a minimum, therefore, the Court should hold that there is not personal jurisdiction over non-California purchasers.

## CONCLUSION

For the foregoing reasons, and those in Bayer's opening brief, Bayer respectfully requests that the Court grant Bayer's Motion to Dismiss Plaintiff's Complaint and dismiss this action with prejudice.

Dated: March 2, 2018

SIDLEY AUSTIN LLP

By: */s/ Amy P. Lally*

Amy P. Lally (SBN 198555)
alally@sidley.com
1999 Avenue of the Stars
17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9500
Facsimile: (310) 595-9501

*Attorneys for Defendants Bayer HealthCare LLC and Bayer Corporation*

---

(Footnote continued from previous page.)

plaintiff's alleged injury did not occur in the forum state, and only connection to forum was provided by the resident plaintiff's purchase of the product); *In re Dental Supplies Antitrust Litig.*, No. 16 Civ. 696 (BMC)(GRB), 2017 WL 4217115 (S.D.N.Y. Sept. 20, 2017) (rejecting plaintiffs' argument that requirements for personal jurisdiction should be relaxed in the class action context because *Bristol-Myers* was not a class action, and holding "[a] putative class representative seeking to hale a defendant into court to answer to the class must have personal jurisdiction over that defendant just like any individual litigant must"); *Spratley v. FCA US LLC*, No. 3:17-CV-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) (court dismissed claims of non-resident plaintiffs, who showed no connection between their claims and the non-resident defendant's contacts with the forum state); *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, No. 16-665, 2017 WL 3129147 (E.D. Pa. July 24, 2017) (defendants who did not sell in the forum could not be subject to specific jurisdiction in case brought by Pennsylvania plaintiffs asserting nationwide consumer class).