Benjamin Heikali (SBN 307466)
bheikali@faruqilaw.com
Joshua Nassir (SBN 318344)
jnassir@faruqilaw.com
FARUQI & FARUQI, LLP
10866 Wilshire Boulevard, Suite 1470
Los Angeles, California 90024
Telephone: 424.256.2884
Facsimile: 424.256.2885

*Attorneys for Plaintiff Sonnetta Woods*

Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9500
Facsimile: (310) 595-9501

Jonathan F. Cohn (*pro hac vice*)
jfcohn@sidley.com
Joshua J. Fougere (*pro hac vice*)
jfougere@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

Morgan Branch (*pro hac vice*)
mbranch@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Attorneys for Defendants Bayer HealthCare LLC and Bayer Corporation*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

CAMILLE CABRERA, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

BAYER HEALTHCARE LLC and BAYER CORPORATION,

Defendants.

Case No. 2:17-cv-08525 JAK (JPRx)

**JOINT STIPULATION RE: DEFENDANTS' MOTION TO COMPEL AND OTHER RELIEF**

**DISCOVERY MATTER**

Hearing Date: January 2, 2020.
Hearing Time: 10:00 a.m.
Hon. Jean P. Rosenbluth
Courtroom: 690, 6th Floor

Fact Discovery Cut Off: May 20, 2019
Pre-Trial Conference Date: N/A
Trial Date: N/A

**TABLE OF CONTENTS**


I. INTRODUCTORY STATEMENTS .......... 3

A. Bayer's Introductory Statement .......... 3

B. Plaintiff's Introductory Statement .......... 4

II. BAYER'S CONTENTIONS AND POINTS OF AUTHORITY .......... 5

A. Factual Background .......... 5

B. Ms. Woods's Discovery Failures .......... 7

C. The Disputed Interrogatories and Document Requests .......... 9

D. Relevant Documents and Information Must Be Disclosed Promptly .......... 15

E. Bayer Is Entitled To Another Deposition Of Ms. Woods .......... 19

III. PLAINTIFF'S POSITION .......... 23

A. Relevant Factual Background .......... 23

B. Plaintiff Does Not Need To Supplement Her Interrogatories .......... 30

C. Plaintiff's Counsel Did Not Obstruct The Deposition Of Ms. Woods .......... 30

D. There Was No Witness Coaching During Deposition Breaks .......... 31

E. The Responses To The Online Intake Questionnaire And Ms. Woods' Initial Call With Plaintiffs' Counsel Are Privileged .......... 34

ATTESTATION .......... 39

**<u>TO THE HONORABLE COURT AND THE CLERK OF THE COURT</u>:**

Pursuant to Local Rule 37-2, Defendants Bayer Healthcare LLC and Bayer Corporation (collectively, "Bayer" or "Defendants") and Plaintiff Sonnetta Woods ("Ms. Woods") respectfully submit this Joint Stipulation pursuant to Local Rule 37-2 regarding Bayer's Motion to Compel and Other Relief.[1] On November 22, 2019, Bayer delivered a letter to Plaintiff's counsel requesting a pre-filing conference to discuss each of Bayer's discovery requests in dispute. On November 25, 2019, Plaintiff sent Bayer a response letter. Later that day, the Parties met and conferred on the issues raised in Bayer's letter. Through the meet and confer process, the Parties were able to reach resolution on certain issues. However, the Parties were unable to resolve certain differences outlined below, and therefore seek the Court's assistance.

## I. INTRODUCTORY STATEMENTS

### A. <u>Bayer's Introductory Statement</u>

Serious discovery abuses have plagued Plaintiff's case from the beginning. This misconduct began with the previous named plaintiff, Camille Cabrera ("Ms. Cabrera"), and have been perpetuated with Ms. Woods. Withholding documents, serving false interrogatory responses, and erroneously asserting the attorney-client privilege over discoverable information is simply not allowed under the Federal Rules of Civil Procedure.

On November 19, 2019, Ms. Woods sat for a deposition and confirmed that she had violated her discovery obligations. Ms. Woods conceded that she did not produce responsive documents and did not understand her own interrogatory responses (despite verifying their contents), which her attorneys had drafted for her. She also revealed that she had supplied responsive documents to her attorneys, who then withheld the documents from Bayer. One of these documents—a label for the multivitamin Ms. Woods currently gives her daughter—shows that Plaintiffs does not care one bit about

[1] Pursuant to Local Rule 37-2.1, copies of the court orders establishing the case schedule are attached as Exhibits A through E to the Declaration of Amy P. Lally ("Lally Decl.").

the vitamins that are allegedly "missing" from Bayer's product, Flintstones Gummies. Indeed, the multivitamin Ms. Woods currently gives her daughter is "missing" the same exact four vitamins allegedly missing in Flintstones Gummies! *The formulations of the two products are identical*. Moreover, Plaintiff's counsel thwarted Bayer's attempts at a smooth and fair examination by interjecting *hundreds* of times over the course of three and a half hours on the record, and improperly instructing Ms. Woods not to answer questions related to witness coaching and her substitution as the named plaintiff, among other matters.

*After the deposition*, Plaintiff finally produced the labels for the other multivitamin products, but the rest of Plaintiff's discovery violations remain. Without the Court's intervention, Bayer will be unable to prepare its case. Bayer respectfully asks the Court to order Plaintiff to comply with her discovery obligations by producing responsive documents related to Bayer's Requests for Production 1, 4, 7, and 8 and responding truthfully to Interrogatories 4, 5, 6, 7, 8, and 9. In addition, the Court should permit Bayer to ask Ms. Woods about (1) her initial contacts with Plaintiff's counsel when she admittedly was not seeking legal counsel, and (2) whether she was coached during breaks in her deposition and, if so, on what. As discussed below, neither topic is privileged.

Plaintiff contends that "[i]t is clear that Defendants seek another deposition to harass Plaintiff, who is a single mother with a full-time job." ***But Plaintiff herself, though counsel, has already agreed to another deposition.*** The only question is the scope of that deposition, and the additional topics Bayer seeks to address would likely take less than 30 minutes. This hardly constitutes harassment.

### B. Plaintiff's Introductory Statement

Plaintiff understands that there are two outstanding discovery disputes at issue here: (1) whether Defendants are entitled to discover privileged communications between Ms. Woods and her attorneys during deposition breaks, a dispute which is grounded purely on Defendants' speculative contention there was witness coaching

during such breaks; and (2) whether Defendants are entitled to the responses to Plaintiff's counsel's online intake questionnaire and to re-depose Plaintiff about her initial intake call with Plaintiff's counsel. Notably, these two disputes remain after the Parties met and conferred on numerous occasions without Court involvement. Throughout these efforts, and in the spirit of compromise, Plaintiff accommodated Defendants with information and documents far beyond Plaintiff's discovery obligations. Despite these accommodations, Defendants insist on involving the Court in this needless dispute. As outlined summarily below and argued in full detail *infra*, both of Defendants' requests seek privileged information and should be rejected by the Court.

On the first issue, Defendants fail to identify a scintilla of evidence that there was witness coaching during the breaks, and at best, present irrelevant and inapposite case law for the sweeping contention that communications during breaks are discoverable under California law. The authority on this issue is clear that a second deposition regarding communications during deposition breaks may be warranted, but ***only if*** there are signs of witness coaching during breaks, such as interruptions of deposition questions to take breaks, or when a witness changes his or her responses drastically after deposition breaks. Defendants have not presented any evidence of the foregoing, because there is none. Accordingly, Defendants should not be permitted to invade on the communications during deposition breaks.

Second, the responses to Plaintiff's counsel's online intake questionnaire regarding this case, and Plaintiff's initial intake call with her counsel, are confidential attorney client communications geared towards legal representation and are therefore protected from disclosure. As further outlined below, the Court should reject Defendants' attempt to invade on such confidential communications.

## II. BAYER'S CONTENTIONS AND POINTS OF AUTHORITY

### A. <u>Factual Background</u>

This case involves two multivitamins manufactured by Bayer: (1) Flintstones™

Gummies Complete Children's Multivitamin Supplement, and (2) Flintstones™ Sour Gummies Complete Children's Multivitamin Supplement (collectively, "Flintstones Gummies"). Ms. Cabrera filed the original Complaint on November 22, 2017, *see* Dkt. 1, and over the past two years, the Parties have engaged in extensive discovery, taken depositions, and have exchanged their initial expert reports. The parties are now on the eve of expert depositions and substantive briefing.

***i. Substitution And Written Discovery Into Ms. Woods***

On May 29, 2019, the first named plaintiff in this matter, Ms. Cabrera, conceded away key elements of her case in her deposition and revealed serious discovery violations. Among other concessions, she did *not* think "Complete" meant all the vitamins or even all "essential" vitamins; rather she expected a "Complete" multivitamin only to include vitamins that might be missing from her child's diet—which Flintstones Gummies indisputably does. In addition, she admitted she purchased the Flintstones Gummies not because of the word "Complete" on the label, but for several unrelated reasons, including that she used Flintstones as a child, making her a "Flintstones Kid." Cabrera Dep. Tr., Lally Decl., Ex. F at 164-67, 288-91. Ms. Cabrera also revealed numerous discovery violations, including that she was never instructed to preserve documents for this litigation, *id*. 190:17-191:8, she was generally unaware of Bayer's Requests for Production, and counsel only asked her to "search for receipts," *id*. 179:3-13; *see also id*. 180:3-13. The deposition also showed that Ms. Cabrera's interrogatories were false, insofar as they represented that she had never purchased any other multivitamins besides Flintstones Gummies, Lally, Decl., Ex. G at Interrog. 5; her deposition revealed that she had in fact purchased numerous other vitamins. Lally Decl., Ex. F at 156:18-157:9. And Ms. Cabrera was clearly coached by counsel during a break. *Id*. 197:8-10; 198:24-199:5. She admitted to "discuss[ing] the deposition with [her] attorney," who then promptly shut down all questioning on the topic. *Id*. 197:8-16. After that, Ms. Cabrera proceeded to change her position on a critical matter and testified that she did not look at the ingredients because of the word, "Complete." *Id*.

204:18-206:11; 275:11-18; 289:18-291:20.

Ms. Cabrera's deposition created serious doubts about whether there was a "good faith basis to proceed with the litigation." Email from M. Branch to B. Heikali (June 4, 2019), Lally Decl., Ex. H. Although counsel initially pledged to amend Ms. Cabrera's discovery responses, eventually counsel informed Bayer that Ms. Cabrera no longer wished to serve as a class representative. *See* Email from M. Branch to B. Heikali (July 10, 2019), Lally Decl., Ex. I; Decl. of B. Heikali (Dkt. 73-1). This revelation mooted Bayer's discovery objections.

On September 11, 2019, pursuant to an agreement by the parties, Ms. Woods stepped in as the named Plaintiff to replace Ms. Cabrera, whose claims were subsequently dismissed with prejudice. *See* Dkt. 75. Bayer agreed to this replacement only after assurances from Plaintiff's counsel that Ms. Woods was prepared to move forward with discovery and produce documents *at any time*. As part of the agreement, Bayer timely served interrogatories and requests for production on September 16, 2019. *Id.* Ms. Woods served her initial discovery responses one month later.

### B. <u>Ms. Woods's Discovery Failures</u>

Despite counsel's assurances that discovery would be different with Ms. Woods, it has not been. Ms. Woods's entire production prior to the deposition was a single photo of a Flintstones™ chewable multivitamin and two partial bank statements. Her deposition revealed that her interrogatory responses are false and counsel had been withholding key documents which she gave to counsel to produce.

First, Ms. Woods's interrogatory responses failed to disclose that she had, in fact, purchased *three different* multivitamin products aside from Flintstones Gummies and Flintstones Chewables. *Compare* Lally Decl., Ex. J at Interrog. 9 *with* Woods Dep. Tr., Lally Decl., Ex. L at 150:3-18; *see also id*. 124:10125:11. Further, these responses do not reflect her personal knowledge, despite her signed verification. Lally Decl., Ex. J. Ms. Woods possessed no knowledge of her answers and never reviewed the documents that she cited in her responses. Lally Decl., Ex. L at 117:5-8, 14-25; 118:1-4, 17-23;

119:3, 22-25; 120:2-24 (emphasis added) (Q. Now going back to Bayflint 00003688, why did you include that document in your interrogatory response if you've never heard of it?. . . A. *I'm not sure.*).

Second, Ms. Woods testified that her attorneys had withheld relevant documents relating to another vitamin she has purchased, Equate. *Id*. 85:4-20. After this discovery violation came to light during the deposition, Plaintiff's counsel refused to remedy the violation, but eventually capitulated *after* the deposition and produced several photos and receipts the evening before Thanksgiving. This was no trivial violation, and it became abundantly clear why Plaintiff's counsel had tried so hard to withhold the documents. As the label shows, *the Equate™ product contains the exact same vitamins as the Flintstones Gummies at issue in this litigation*. Lally Decl., Exs. M, N . The formulations of the two products are *identical*, and the Equate product advertises its resemblance to Flintstones Gummies on its label. *Id*. It is thus clear that Ms. Woods has no concern or problem with the purportedly "missing" vitamins. The crux of the complaint is false.

Third, Plaintiff's counsel improperly obstructed discovery into these issues. During Ms. Woods's examination, Plaintiff's counsel objected over and over again—especially when sensitive topics concerning Plaintiff's discovery failures were brought to light. *E.g.*, Lally Decl., Ex. L at 121:11-122:13. Plaintiff's counsel objected a total of *373 times*—a rate of 1.75 objections per minute. *See generally* Lally Decl., Ex. L.

Fourth, Plaintiff's counsel's objections were baseless.[2] Plaintiff's counsel repeatedly shut down legitimate inquiries into whether they coached Ms. Woods, like they did Ms. Cabrera, during breaks about non-privileged matters. *Id.* 61:1-18; 108:17-109:11. And Ms. Woods was instructed not to answer any questions about her initial phone call with Plaintiff's counsel on the basis of privilege, *e.g. id*. 158:13-17, even though she explicitly conceded she "wasn't thinking" about hiring an attorney and "just wanted to know information" about Flintstones Gummies after seeing a banner

[2] Multiple times, Bayer pushed back against Plaintiff counsel's speaking objections. *Id*. 165:25; 166:1; 204:13-205:6.

notification on Facebook. *Id.* 157:24-158:6; *see also id.* 52:18-24; 53:1-15.

Counsel likewise baselessly withheld the public Facebook advertisement and questionnaire Ms. Woods saw and filled out relating to Flintstones. Plaintiff's counsel finally produced the Facebook posting and the blank questionnaire the day before Plaintiff's portion of this stipulation was due under the local rules. (Counsel continued to withhold the filled-out questionnaire). The questionnaire makes clear that filling it out and submitting it "does not create an attorney-client relationship." Plaintiff's privilege assertion was—and is—baseless.

There is simply no justification for this discovery behavior and, accordingly, Bayer seeks relief from this Court.

**C. <u>The Disputed Interrogatories and Document Requests</u>**

With this motion, Bayer specifically moves to compel supplemental responses to Ms. Woods's responses to Interrogatories 4-9, and Requests for Production Nos. 1, 4, 7, and 8. The pertinent Interrogatories and Ms. Woods's responses are as follows:

| |
|---|
| **<u>INTERROGATORY NO. 4</u>:**<br><br>Please state all facts underlying, warranting, justifying, or evidencing your allegation that you and all "other consumers" "believ[ed] that [Flintstones Gummies] contain all the vitamins" due to "Defendants' 'Complete' multivitamin supplement representation" on the label. First Am. Compl. ¶ 25. |
| **<u>RESPONSE TO INTERROGATORY NO. 4</u>:**<br><br>Plaintiff incorporates herein by specific reference each of the aforementioned General Objections. Plaintiff further objects to this Interrogatory as overbroad and unduly burdensome. Plaintiff further objects to the extent this Interrogatory seeks identification of what specific evidence Plaintiff intends to rely on in this matter, as Plaintiff will disclose such evidence as required by the Court's rules and orders, including orders regarding disclosure of exhibit lists and expert testimony. Plaintiff further objects to this Interrogatory on the grounds that it seeks information equally available to Defendants. Plaintiff further objects to this Interrogatory to the extent it calls for a legal conclusion and/or an expert opinion. Plaintiff further objects to this Interrogatory on the grounds that Defendants assumes facts not found in Plaintiff's First Amended Complaint, in particular that Plaintiff pleads this allegation in regard to "all" consumers. Plaintiff further objects to this Interrogatory to the extent it requires responding party to state "all facts" supporting a contention and is thereby impermissibly overbroad.<br><br>Subject to and without waiving the foregoing General Objections, Plaintiff responds as follows: ***Plaintiff refers Defendants to the other allegations and*** |

***pictures attached in the Complaint, the documents and discovery responses produced by Defendants thus far in this litigation (e.g., responses to all sets of Plaintiff's Requests for Production of Documents, Plaintiff's Interrogatories, and Plaintiff's Requests for Admission), and declarations, reports, and/or deposition testimony provided by expert and corporate witnesses thus far in this litigation. Specifically, Plaintiff refers Defendant to the Expert Report of J. Michael Dennis, submitted on July 16, 2019. Plaintiff also refers Defendants to Bay-Flint-0003688. The discovery period remains open and Plaintiff reserves the right to supplement or amend her answers.***

**INTERROGATORY NO. 5:**

Please state all facts underlying, warranting, justifying, or evidencing your allegation that you and all "other consumers purchased the [Flintstones Gummies]" "[i]n reasonable reliance on Defendants' 'Complete' multivitamin supplement representation" on the Flintstones Gummies. *Id*.

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff incorporates herein by specific reference each of the aforementioned General Objections. Plaintiff further objects to this Interrogatory as overbroad and unduly burdensome. Plaintiff further objects to the extent this Interrogatory seeks identification of what specific evidence Plaintiff intends to rely on in this matter, as Plaintiff will disclose such evidence as required by the Court's rules and orders, including orders regarding disclosure of exhibit lists and expert testimony. Plaintiff further objects to this Interrogatory on the grounds that it seeks information equally available to Defendants. Plaintiff further objects to this Interrogatory to the extent it calls for a legal conclusion and/or an expert opinion. Plaintiff further objects to this Interrogatory on the grounds that Defendants assumes facts not found in Plaintiff's First Amended Complaint, in particular that Plaintiff plead this allegation in regard to "all" consumers. Plaintiff further objects to this Interrogatory to the extent it requires responding party to state "all facts" supporting a contention and is thereby impermissibly overbroad.

Subject to and without waiving the foregoing General Objections, Plaintiff responds as follows: ***Plaintiff refers Defendants to the other allegations and pictures attached in the Complaint, the documents and discovery responses produced by Defendants thus far in this litigation (e.g., responses to all sets of Plaintiff's Requests for Production of Documents, Plaintiff's Interrogatories, and Plaintiff's Requests for Admission), and declarations, reports, and/or deposition testimony provided by expert and corporate witnesses thus far in this litigation. Specifically, Plaintiff refers Defendants to the Declaration and Expert Report of J. Michael Dennis, submitted on July 16, 2019. Plaintiff also refers Defendants to Bay-Flint-0003688. The discovery period remains open and Plaintiff reserves the right to supplement or amend her answers.***

**INTERROGATORY NO. 6:**

Please state all facts underlying, warranting, justifying, or evidencing your allegation that you and all "other consumers did not know, and had no reason to know, that [Flintstones Gummies] do not contain the Missing Vitamins." *Id*. ¶ 26.

**RESPONSE TO INTERROGATORY NO. 6**:

Plaintiff incorporates herein by specific reference each of the aforementioned General Objections. Plaintiff further objects to this Interrogatory as overbroad and unduly burdensome. Plaintiff further objects to the extent this Interrogatory seeks identification of what specific evidence Plaintiff intends to rely on in this matter, as Plaintiff will disclose such evidence as required by the Court's rules and orders, including orders regarding disclosure of exhibit lists and expert testimony. Plaintiff further objects to this Interrogatory on the grounds that it seeks information equally available to Defendants. Plaintiff further objects to this Interrogatory to the extent it calls for a legal conclusion and/or an expert opinion. Plaintiff further objects to this Interrogatory on the grounds that Defendants assumes facts not found in Plaintiff's First Amended Complaint, in particular that Plaintiff plead this allegation in regard to "all" consumers. Plaintiff further objects to this Interrogatory to the extent it requires responding party to state "all facts" supporting a contention and is thereby impermissibly overbroad.

Subject to and without waiving the foregoing General Objections, Plaintiff responds as follows: ***Plaintiff refers Defendants to the other allegations and pictures attached in the Complaint, the documents and discovery responses produced by Defendants thus far in this litigation (e.g., responses to all sets of Plaintiff's Requests for Production of Documents, Plaintiff's Interrogatories, and Plaintiff's Requests for Admission), and declarations, reports, and/or deposition testimony provided by expert and corporate witnesses thus far in this litigation. Specifically, Plaintiff refers Defendants to the Declaration and Expert Report of J. Michael Dennis, submitted on July 16, 2019. Furthermore, because the Flintstones Gummies do not disclose that they lack the Missing Vitamins, consumers do not know, and have no reason to know, that these vitamins are missing. The discovery period remains open and Plaintiff reserves the right to supplement or amend her answers.***

**INTERROGATORY NO. 7:**

Please state all facts underlying, warranting, justifying, or evidencing your allegation that you and all "other consumers . . . paid an unlawful premium for the [Flintstones Gummies]." *Id*. ¶ 29.

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff incorporates herein by specific reference each of the aforementioned General Objections. Plaintiff further objects to this Interrogatory as overbroad and unduly burdensome. Plaintiff further objects to the extent this Interrogatory seeks identification of what specific evidence Plaintiff intends to rely on in this matter, as Plaintiff will disclose such evidence as required by the Court's rules and orders, including orders regarding disclosure of exhibit lists and expert testimony. Plaintiff further objects to this Interrogatory on the grounds that it seeks information equally available to Defendants. Plaintiff further objects to this Interrogatory to the extent it calls for a legal conclusion and/or an expert opinion. Plaintiff further objects to this Interrogatory on the grounds that Defendants assumes facts not found in Plaintiff's First Amended Complaint, in particular that Plaintiff plead this allegation in regard to "all" consumers. Plaintiff further objects to this Interrogatory to the extent it requires responding

party to state "all facts" supporting a contention and is thereby impermissibly overbroad.

Subject to and without waiving the foregoing General Objections, Plaintiff responds as follows: ***Plaintiff refers Defendants to the other allegations and pictures attached in the Complaint, the documents and discovery responses produced by Defendants thus far in this litigation (e.g., responses to all sets of Plaintiff's Requests for Production of Documents, Plaintiff's Interrogatories, and Plaintiff's Requests for Admission), and declarations, reports, and/or deposition testimony provided by expert and corporate witnesses thus far in this litigation. Specifically, Plaintiff refers Defendants to the Declaration and Expert Report of J. Michael Dennis, submitted on July 16, 2019, and the Declaration and Expert Report of Kevin W. Caves, Ph.D., submitted on July 16, 2019. Plaintiff also refers Defendants to Bay-Flint-0001938. The discovery period remains open and Plaintiff reserves the right to supplement or amend her answers.***

**<u>INTERROGATORY NO. 8</u>:**

Please state all facts underlying, warranting, justifying, or evidencing your allegation that you and all "other consumers would have paid significantly less for . . . [or] would not have purchased [Flintstones Gummies] at all had they known that the [Flintstones Gummies] do not contain the Missing Vitamins." *Id*.

**<u>RESPONSE TO INTERROGATORY NO. 8</u>:**

Plaintiff incorporates herein by specific reference each of the aforementioned General Objections. Plaintiff further objects to this Interrogatory as overbroad and unduly burdensome. Plaintiff further objects to the extent this Interrogatory seeks identification of what specific evidence Plaintiff intends to rely on in this matter, as Plaintiff will disclose such evidence as required by the Court's rules and orders, including orders regarding disclosure of exhibit lists and expert testimony. Plaintiff further objects to this Interrogatory on the grounds that it seeks information equally available to Defendants. Plaintiff further objects to this Interrogatory to the extent it calls for a legal conclusion and/or an expert opinion. Plaintiff further objects to this Interrogatory on the grounds that Defendants assumes facts not found in Plaintiff's First Amended Complaint, in particular that Plaintiff plead this allegation in regard to "all" consumers. Plaintiff further objects to this Interrogatory to the extent it requires responding party to state "all facts" supporting a contention and is thereby impermissibly overbroad.

Subject to and without waiving the foregoing General Objections, Plaintiff responds as follows: ***Plaintiff refers Defendants to the other allegations and pictures attached in the Complaint, the documents and discovery responses produced by Defendants thus far in this litigation (e.g., responses to all sets of Plaintiff's Requests for Production of Documents, Plaintiff's Interrogatories, and Plaintiff's Requests for Admission), and declarations, reports, and/or deposition testimony provided by expert and corporate witnesses thus far in this litigation. Specifically, Plaintiff refers Defendants to the Declaration and Expert Report of J. Michael Dennis, submitted on July 16, 2019, and the Declaration and Expert Report of Kevin W. Caves, Ph.D., submitted on July 16, 2019. The discovery period remains open and Plaintiff reserves the right to supplement or amend her answers.***

**INTERROGATORY NO. 9:**

Identify all multivitamins you or your family members have purchased and/or used, including but not limited to the Flintstones Gummies at issue, along with the dates on which the multivitamins were purchased, and the prices of the products purchased.

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff incorporates herein by specific reference each of the aforementioned General Objections. Plaintiff further objects to this Interrogatory and will not respond to this Interrogatory to the extent it seeks information regarding products not related to this underlying Action, as the Interrogatory is not relevant to any party's claim or defense and is not proportional to the needs of this case. Plaintiff further objects to this Interrogatory to the extent it seeks information regarding purchases Plaintiff did not personally make. Plaintiff further objects to this Interrogatory on the ground that, to the extent it seeks information regarding products purchased by non-parties, the Interrogatory is not relevant to any party's claim or defense and is not proportional to the needs of this case. Plaintiff further objects to this Interrogatory on the grounds that it is overbroad as to scope of time. Plaintiff further objects to the extent the phrase "family members" is undefined, vague and ambiguous.

Subject to and without waiving the foregoing General Objections, Plaintiff responds as follows:

***1. Flintstones™ Gummies Complete Children's Multivitamin Supplement:***

a. Purchased on or around January 2019. Plaintiff does not recall the price she paid for this product.

b. Purchased approximately three to four times throughout 2018. Plaintiff does not recall the prices she paid for this product.

c. Purchased approximately three to four times throughout 2017. Plaintiff does not recall the prices she paid for this product.

d. Purchased approximately three to four times throughout 2016. Plaintiff does not recall the prices she paid for this product.

***2. Flintstones™ Sour Gummies Complete Children's Multivitamin Supplement:***

a. Purchased on or around early 2016. Plaintiff does not recall the price she paid for this product.

***3. Flintstones™ Complete Chewables Multivitamins tablets:***

a. Purchased on or around February to March 2019. Plaintiff does not recall the price she paid for this product.

Lally Decl., Ex. J (emphases added). The pertinent Requests for Production and Ms. Woods's unsatisfactory responses in relevant part are as follows:

**<u>REQUEST FOR PRODUCTION NO. 1:</u>**

Produce any and all Documents and other things that you collected, reviewed, consulted, or otherwise saw, read, or relied upon to answer Defendants' First Set of Interrogatories.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 1</u>:**

Plaintiff incorporates herein by specific reference each of the aforementioned General Objections. Plaintiff further objects to this Request to the extent it seeks documents protected from disclosure under the attorney-client privilege and/or the attorney work product doctrine.

***Subject to and without waiving the foregoing Objections, Plaintiff responds as follows: To the extent they are not already in Defendants' possession, Plaintiff will produce all relevant, non-privileged, responsive documents in Plaintiff's possession, custody, or control in response to this Request.***

**<u>REQUEST FOR PRODUCTION NO. 4:</u>**

Produce all Documents relating to multivitamins—including but not limited to the Flintstones Gummies at issue—that you have read and/or have in your possession, custody or control, including but not limited to pamphlets, books, web printouts, scholarly articles, and academic journals.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 4</u>:**

Plaintiff incorporates herein by specific reference each of the aforementioned General Objections. Plaintiff further objects to this Request as it is overbroad as to the scope of time and documents requested. Plaintiff further objects to this Request on the grounds that, to the extent it seeks Documents regarding products not related to this underlying Action, the Request is not relevant to any party's claim or defense and is not proportional to the needs of this case. Plaintiff further objects to this Request on the grounds that it seeks documents not in Plaintiff's possession or control. ***Plaintiff is withholding documents based on these objections.***

***Subject to and without waiving the foregoing Objections, Plaintiff responds as follows: To the extent they are not already Defendants' possession, Plaintiff will produce all relevant, non-privileged, responsive documents in Plaintiff's possession, custody, or control in response to this Request.***

**<u>REQUEST FOR PRODUCTION NO. 7:</u>**

Produce all Documents and Communications that you have or will collect, consult, review, or otherwise rely upon to support any and all of the allegations in the First Amended Complaint. This includes, but it not limited to, articles, journals, research, reports, photographs, transcripts, financial information, marketing materials, and any other Documents or things.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 7</u>:**

Plaintiff incorporates herein by specific reference each of the aforementioned General Objections. Plaintiff further objects that this Request seeks documents protected from disclosure under the attorney-client privilege and the attorney work product doctrine. Plaintiff further objects to this Request on the grounds that it is vague and ambiguous as to the type of documents requested. Plaintiff further objects to this Interrogatory to the extent it calls for a legal conclusion and/or an expert opinion.

***Subject to and without waiving the foregoing Objections, Plaintiff responds as follows: To the extent they are not already Defendants' possession, Plaintiff will produce all relevant, non-privileged, responsive documents in Plaintiff's possession, custody, or control in response to this Request.***

**<u>REQUEST FOR PRODUCTION NO. 8:</u>**

Produce any and all Document and other things you reviewed or intend to review to prepare for your deposition.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 8</u>:**

Plaintiff incorporates herein by specific reference each of the aforementioned General Objections. Plaintiff further objects that this Request seeks documents protected from disclosure under the attorney-client privilege and the attorney work product doctrine. Plaintiff further objects to this Interrogatory on the grounds that it seeks information equally available to Defendants. Plaintiff further objects that this Request is vague and ambiguous as to the type of Documents requested.

***Subject to and without waiving the foregoing Objections, Plaintiff responds as follows: To the extent they are not already Defendants' possession, Plaintiff will produce all relevant, non-privileged, responsive documents in Plaintiff's possession, custody, or control in response to this Request.***

Lally Decl., Ex. K (emphases added).

**D. <u>Relevant Documents and Information Must Be Disclosed Promptly</u>**

The Court should compel Ms. Woods's prompt disclosure of all requested materials and information. Federal Rule of Civil Procedure 26(b) provides that parties may obtain discovery regarding:

> [A]ny *nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, *the importance of the discovery in resolving the issues*, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphases added).

When a party fails to respond to interrogatories and withholds relevant documents, Rule 37 authorizes the party seeking discovery to file a motion to compel. Fed. R. Civ. P. 37(a)(1), (3)(A)-(B); *In re Redmond*, No. 10-CV-02552, 2011 WL 13143712, at *3 (C.D. Cal. May 2, 2011), *aff'd*, 510 F. App'x 570 (9th Cir. 2013). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

***i. Failure to Respond to Interrogatories***

Interrogatory No. 9 requests that Plaintiff "[i]dentify all multivitamins you or your family members have purchased and/or used, including but not limited to the Flintstones Gummies at issue, along with the dates on which the multivitamins were purchased, and the prices of the products purchased." Interrogatories 4-8 request disclosure of the factual evidence at Ms. Woods's disposal regarding both her and "other consumers," perception of Flintstones Gummies, the meaning of the term "Complete," factors that motivate purchase, damages, and her classwide theories of liability. *See supra* __. This is plainly within the scope of discovery and "Rule 33 provides that '[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)." *Beets v. Molina Healthcare, Inc.*, No. CV 16-5642-CAS (KSX), 2019 WL 2895630, at *2 (C.D. Cal. Apr. 9, 2019) (quoting Fed. R. Civ. P. 33(a)(2)).

Ms. Woods's deposition made clear that she has failed to provide full and accurate interrogatory responses. In particular, she omitted that she has purchased numerous other vitamins for herself and her family. In addition to the Equate multivitamins, she purchased Princess multivitamins and Vitafusion pre-natal vitamins, neither of which are mentioned in the responses. *Compare* Lally Decl., Ex. J at Interrog. 9 *with* Lally Decl., Ex. L at 149:18-150:18; *see also id.* 124:10-125:16. This basic failure raises serious concerns about the sufficiency of her discovery compliance elsewhere. And these concerns are only underscored by the fact that when shown her responses at the deposition, she did not know and had never seen the documents cited

in her own responses. *Id*. at 117:21-121:9. This deposition testimony belies her signed verification that these responses were based off of her personal knowledge. Lally Decl., Ex. J. Further, Bayer could not meaningfully depose Ms. Woods about Equate or the other vitamins she had purchased because she did not bring the labels for those vitamins to her deposition, and Bayer only learned about those purchases at the deposition.[3]

While counsel has subsequently produced photographs of the other vitamins (after receiving a draft of this motion), counsel has not updated the plainly false interrogatory responses, including those about other topics that are not based on Ms. Woods's own knowledge.

Plaintiff appears to indicate that she has no duty to provide accurate interrogatory responses now that her inaccurate responses have been revealed during her deposition. That is incorrect, and the case Plaintiff cites pertains to updating interrogatories to disclose trial witnesses, a circumstance plainly not present here. *Nuance Commc'ns, Inc. v. ABBYY Software House*, 2012 WL 2838431 (N.D. Cal July 10, 2012). If Plaintiff's proposed rule were the case, it would incentivize litigants to provide inaccurate, evasive, and incomplete responses and simply wait until their depositions to "correct" it. This approach "deprives" the other party of "a meaningful opportunity to take discovery." *Vieste, LLC v. Hill Redwood Dev.*, No. C-09-04024 JSW DMR, 2011 WL 2181200, at *3 (N.D. Cal. June 3, 2011).

Accordingly, Bayer respectfully moves this court to compel full and correct responses. *See also Beeman v. Anthem Prescription Mgmt., Inc.*, No. 04-CV-407, 2017 WL 5564535 (C.D. Cal. Nov. 17, 2017) (granting motion to compel further interrogatory responses and production of documents).

---

[3] Plaintiff's position that Bayer should have known that Plaintiff viewed these documents as irrelevant is meritless. The documents undermine the crux of Plaintiff's case, and are thus obviously and indisputably relevant. Further, Plaintiff previously insisted that Bayer produce information concerning other multivitamin products. And, after negotiations with Plaintiff, Bayer in fact did *produce* information about other children's multivitamins (regardless of whether the products said "complete") as well as other products that used the word "complete."

### *ii. Failure to Produce Responsive Documents*

Requests 1, 7, and 8 collectively seek documents that Ms. Woods consulted to respond to Bayer's interrogatories, to support her allegations in the First Amended complaint and, importantly, to *prepare for her deposition*. Lally Decl., Ex. K. Request 4 seeks materials that Ms. Woods may have reviewed concerning Flintstones Gummies or any multivitamins. *Id.*

Bayer learned of Plaintiff counsel's failure to produce important documents after Ms. Woods revealed during her deposition that such documents exist. Lally Decl., Ex. L at 85:4-20; 125:12-21. This is a glaring discovery violation. *Morisky v. Pub. Serv. Elec. & Gas Co.*, 191 F.R.D. 419, 426 (D.N.J. 2000) (compelling production and noting "if not for the fortuitous revelation by one of the named plaintiffs, the defendants may still not know about the [the documents] at all."). Because counsel has now produced pictures of the other multivitamin products she has purchased recently, they would like to portray these disclosures as taking place "in the spirit of cooperation." Counsel neglects to tell the Court that, in all of these occasions, counsel flatly refused to make the productions, even after receiving Bayer's deficiency letter and after meet and confers. It was only after receiving an initial draft of this motion—and further burdening Bayer and driving up expenses—that Plaintiff *finally* agreed to produce this plainly responsive and highly relevant information.[4]

Moreover, counsel has not remedied the other document deficiencies. Ms. Woods testified that she viewed and filled out a Facebook advertisement and online

[4] Plaintiff argues that the disclosure in her discovery responses that she was withholding responsive documents means there was no discovery violation and it was simply Bayer's failure to follow up. This is plainly incorrect. When Bayer agreed to the substitution of Ms. Woods in place of Ms. Cabrera it was following the revelation (among many others) that Ms. Cabrera failed to produce information related to other vitamins she had purchased. Lally Decl., Ex. I. Contrary to what Ms. Woods states Bayer did in fact promptly raise discovery deficiencies with *her* after receiving her initial responses because on the face of her production and responses it was deficient. Only after extensive meet and confers, again, did Plaintiff's finally relent and agree to updated responses which counsel served less than a month before the deposition. And counsel represented to Bayer at those meet and confers that the picture of the Flintstone's vitamin was the *only responsive* document that she had. Lally Decl., Ex. P.

questionnaire related to Flintstones, which ultimately led to counsel contacting her. *See* Lally Decl., Ex. L at 157:24-158:6. Again, Bayer only learned about this information for the first time in her deposition, even though it should have been disclosed many weeks earlier. *Morisky*, 191 F.R.D. at 426 ("Finally, the court is particularly dismayed that the existence of these questionnaires did not surface with the plaintiffs' Initial Disclosures or with the defendant's request for production of documents."). On the night Plaintiff's portion of this motion was due, Plaintiff finally produced the blank questionnaire and Facebook advertisement. But Plaintiff still has not produced the filled out questionnaire for Ms. Woods. Plaintiffs asserts privilege, *see infra*, but the blank questionnaire makes clear that "submitting this form does not create an attorney-client relationship," Lally Decl., Ex. O, and Ms. Woods made clear that she was not seeking legal counsel even when she subsequently spoke to counsel. *See* Lally Decl., Ex. L at 157:24-158:6. Overall, counsel's approach to discovery gives Bayer no assurance that all responsive documents have been produced. Accordingly, this Court should compel Plaintiff to produce all responsive documents immediately.

**E. <u>Bayer Is Entitled To Another Deposition Of Ms. Woods</u>**

*Plaintiff has already agreed to a second deposition*, and the only issue is scope. The Court should reject Plaintiff's assertions of privilege and attempts to obstruct proper questioning in this second deposition.

Plaintiff's counsel already obstructed the examination of Ms. Woods and prevented legitimate questioning into non-privileged matters. The rules are clear that "[t]he court must allow additional time . . . if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." Fed. R. Civ. P. 30(d)(1).

Constant interference during a deposition is a "blatant" and "egregious" discovery violation. *Clarendon Nat'l Ins. Co. v. Foley & Bezek, LLP*, No. 00-CV-11641, 2001 WL 1223486, at *1 n.2 (C.D. Cal. July 26, 2001), *aff'd*, 53 F. App'x 452 (9th Cir. 2002). Once a deposition begins, counsel cannot confer with the witness at

any time, even on breaks, except to determine whether a privilege should be asserted. *See Vestin Realty Mortg. II, Inc. v. Klaas*, No. 08-CV-2011, 2010 WL 4259946, at *4 (S.D. Cal. Oct. 25, 2010); *In re Cathode Ray Tube Antitrust Litig.*, No. 14-CV-2058, 2015 WL 12942210, at *3 (N.D. Cal. May 29, 2015). If improper conferences take place, they are subject to inquiry by the opposing party. *BNSF Ry. Co. v. San Joaquin Valley R.R. Co.*, No. 08-CV-01086, 2009 WL 3872043, at *3 (E.D. Cal. Nov. 17, 2009); *see also Horowitz v. Chen*, No. 17-CV-00432, 2018 WL 4560697, at *3 (C.D. Cal. Sept. 20, 2018). Ms. Woods's counsel consistently interfered in the deposition.

First, the record shows roughly *373* separate objections of Plaintiff's counsel in the span of three hours and 33 minutes on the record (most of which were improper speaking objections). *See generally* Lally Decl., Ex. L. Bayer raised this issue several times over the course of the deposition, *e.g. id*. at 53:19-22, but Plaintiff's counsel nevertheless continued to interfere with Bayer's attempts to question the witness. *See id.*, 204:18-21. These are precisely the kind of tactics that this Court has forbidden. *Horowitz*, 2018 WL 4560697 at *3.

Second, Plaintiff's counsel obstructed Bayer's valid questions about witness coaching during the deposition breaks. *See, e.g.*, Lally Decl., Ex. L at 61:1-18; 108:17109:11. This interference was entirely improper. California law is abundantly clear that Bayer is entitled to ask about the content and extent of discussions during a break in the deposition. *See In re Cathode Ray Tube*, 2015 WL 12942210, at *4-5 (ordering second deposition to allow inquiries into conferences during breaks about the scope and extent of witness coaching); *Vestin Realty*, 2010 WL 4259946, at *3-4 (same). Plaintiffs' counsel improperly coached Ms. Cabrera during her deposition, Lally Decl., Ex. L at 197: 8-10; 198:24-199:5, so Bayer provided Plaintiffs' counsel with case law at the start of Ms. Woods's deposition confirming that his behavior was improper. Nonetheless, Plaintiffs' counsel shut down any questioning about the

discussions during the breaks.[5]

Third, Plaintiff's counsel improperly instructed Ms. Woods not to answer any questions about their initial phone call to her. *E.g.*, *id*. 158:13-17. As the record shows, Ms. Woods had no intention of bringing a lawsuit or hiring a lawyer when she first spoke with Plaintiff's counsel on the phone—in response to a Facebook blog post. She was not seeking legal counsel or advice of any kind. She "just wanted to know information." *Id*. at 158:2-6. At that time, this lawsuit was already well underway, and Ms. Woods had no idea that she was being recruited by Plaintiff's counsel to step in for Ms. Cabrera, who had recently doomed her case.

This is dispositive for any attempt to claim privilege. Where, as here, the individual in question does not possess any intention to seek legal counsel, those communications are not privileged. *Trabakoolas v. Watts Water Techs., Inc.*, No. 12-CV-01172, 2013 WL 1563232, at *3-4 (N.D. Cal. Apr. 12, 2013). That is because "Unless it can be said that the dominant purpose of transmitting information to an attorney is the seeking of legal advice, the attorney-client privilege is non-existent." *Fed. Indus. Inc. v. Cameron Techs. US Inc.*, No. 07-CV-1098, 2009 WL 10670395, at *3 (C.D. Cal. Jan. 30, 2009) (finding emails with counsel not privileged where the content involved factual discussions about business transaction with no threat of pending litigation); *see also Taylor v. Waddell & Reed, Inc.*, No. 09-CV-02909, 2011 WL 1979486, at *3 (S.D. Cal. May 20, 2011) (explaining that the "pivotal question is whether the putative class members were seeking legal advice or representation at the time when they completed any questionnaires, or responded to the letter inquiries as is the case here" and finding no privilege in solicitation communications); *People v. Gionis*, 892 P.2d 1199, 1210 (Cal. 1995).

Here, despite counsel's *ipsi dixit* to the contrary, Plaintiff's own testimony

[5] The day before counsel's response to this letter was due under the local rules, counsel proposed to "remedy" this conduct through an affidavit regarding discussions during breaks. This plainly does not cure the issue. Bayer is entitled to discover Ms. Woods' *own testimony* regarding this coaching; not receive more lawyer-crafted responses.

explicitly disclaims any intention to hire an attorney or to seek advice from an attorney; indeed, she testified on the call she "wasn't thinking about" "retaining a lawyer" or thinking that she was "going to hire a lawyer on this call." Lally Decl., Ex. L at 158:2-10. Again, she "just wanted to know information." Ex. K, 158:2-6. In such circumstances, courts have been "unwilling to infer from these facts that a purpose of retaining counsel or securing legal advice existed where Plaintiffs' own testimony contradicts such a conclusion." *Trabakoolas*, 2013 WL 1563232, at *3-4; *Morisky*, 191 F.R.D. at 422 (finding no privilege where "deposition testimony of named plaintiff Dennis Kimble indicates that he had not even considered suing [defendant] before he received and completed the questionnaire"); *see also Cameron Techs.*, 2009 WL 10670395, at *3; *Taylor*, 2011 WL 1979486, at *3; *cf. Morisky*, 191 F.R.D. at 424 (disapproving of party "trying to protect against the disclosure of the completed questionnaires under the guise of the attorney-client privilege [because] the questionnaires contain fact inquiries that have nothing to do with legal representation."); *Schiller v. City of New York*, 245 F.R.D. 112, 116 (S.D.N.Y. 2007) (finding no privilege attached to class questionnaires because there was "no evidence that any person who completed a questionnaire believed at that time that he or she was seeking representation by the NYCLU"). Plaintiff's testimony was limited, because her attorney quickly instructed her not to answer, but what she did say belies any argument that she was seeking legal counsel or advice.

Plaintiff's cited case for its sweeping position, *Barton v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 410 F.3d 1104 (9th Cir. 2005), is not to the contrary. In *Barton*, the Ninth Circuit recognized that "[m]ore important than what the law firm intended is what the clients thought" when analyzing whether an initial communication is privileged. *Id.* at 1107. That is because "[i]t is [the client's] privilege, not any right of the lawyers, that is at stake." *Id.* at 1110. Despite a disclaimer on the attorney's website that "disclaimed any formation of an attorney-client relationship," plaintiffs were expressly seeking legal advice and intending to retain attorneys for their class action when they

contacted counsel. *Id.* at 1110-11; *see also Taylor*, 2011 WL 1979486, at *3. Because plaintiffs in *Barton* were intending to form that relationship, "the court refused to penalize the clients for ambiguity created by the attorney's inartful drafting of the website's content." *Taylor*, 2011 WL 1979486, at *3 (discussing *Barton*). In stark contrast, Ms. Woods had *no such intention* when she filled out the questionnaire and was speaking with counsel after *they* contacted *her*. Again, by her own admission, she was not seeking legal counsel or advice of any kind; she "just wanted to know information." Lally Decl., Ex. L at 158:2-6. There was no such testimony in *Barton*.

Accordingly, Bayer should be entitled to question Ms. Woods about this phone call in a second deposition. Plaintiff now agrees that Bayer should be able to depose Ms. Woods a second time, but disagrees that Bayer can ask questions about this clearly non-privileged material. The Court should reject Plaintiffs' meritless arguments limiting the deposition.

* * *

For the foregoing reasons, Bayer respectfully asks the Court to permit Bayer to ask Ms. Woods in her second deposition—to which Plaintiff has already agreed—about the following topics: i) Ms. Woods's initial phone call with Plaintiff's counsel, and ii) whether she was coached during breaks in her deposition and, if so, on what. Bayer also asks the court to compel Ms. Woods to produce all relevant documents and information related to Bayer's Requests for Production 1, 2, 4, 7, 8, and 9; and Bayer's Interrogatories 4, 5, 6, 7, and 8. And Bayer requests payment of reasonable expenses associated with Ms. Woods's depositions and bringing this motion to compel, along with any other relief the Court deems appropriate and just.

## III. PLAINTIFF'S POSITION

### A. <u>Relevant Factual Background</u>

To the extent Defendants' portion of this stipulation mischaracterizes former plaintiff Ms. Cabrera's involvement in the case, the prior discovery disputes that have

now been resolved by the Parties, and the events leading up to this motion, Plaintiff clarifies the record below.

### ***i. Defendants Mischaracterize Ms. Cabrera's Discovery Efforts and Deposition***

First, Defendants' characterization of former plaintiff Ms. Cabrera's deposition testimony and discovery efforts is rife with inaccuracies and deceptively isolates portions of her testimony. While Ms. Cabrera's deposition testimony is inconsequential to this Action given that Ms. Cabrera is neither a plaintiff nor representative of the putative class, it is necessary to correct Defendants' misleading narrative of these events.

For example, Defendants contend that Ms. Cabrera "did *not* think 'Complete' meant all the vitamins or even all 'essential' vitamins." However, Ms. Cabrera testified that she believed the "Complete" representation meant she would receive all the vitamins. *See, e.g.*, Cabrera Tr., Lally Decl., Ex. F at 274:25, 275:1-13 (testifying that she did not turn around the Product's label to see that the Product did not contain the missing vitamins "because it says 'complete'" on the label); *id.* at 275:24-25, 276:1-2 (testifying that she believes the product would have "all the vitamins for my daughter.") Defendants' further position that Ms. Cabrera did not purchase the Products due to the "Complete" representation is belied by numerous portions of Ms. Cabrera's testimony. *See, e.g.*, *id.* at 72:22-25 (testifying that, in regard to vitamins she was purchasing for her daughter, "it's just about just being complete."); *id.* at 275:22-25, 276:1-2 (testifying that she "didn't need to buy [vitamins] that didn't say 'complete.'").

Defendants' contention that Ms. Cabrera was coached is equally irrelevant and inconsistent with the factual record. Specifically, Defendants state that Ms. Cabrera was coached because she "admitted to 'discuss[ing] the deposition with [her] attorney.'" First and foremost, Defendants' baseless allegation is directly contradicted by the fact that when counsel for Defendants' directly asked Ms. Camille if she had been coached, Ms. Cabrera affirmatively denied the accusation. *Id*. at 199:7-10 (Q: "Okay. Did he

coach you?" […] "No.") Not only is Defendants' contention belied by the factual record, Defendants provide no evidence that Ms. Cabrera and her counsel discussed the substance of her deposition testimony during the deposition breaks. According to Defendants' logic, informing a client that he or she is doing a 'good job' with the deposition (i.e., discussing the deposition) would indicate coaching. Defendants' baseless accusations should be rejected. Equally baseless is Defendants' claim that after a break, Ms. Cabrera "change[d] her position on a critical matter and testified that she did not look at the ingredients because of word, 'Complete.'" Defendants fail to cite to any testimony where Ms. Cabrera stated a different or inconsistent position. Rather, during Ms. Cabrera's deposition, counsel for Defendants even *confirmed* that Ms. Cabrera "mentioned earlier that [she] did not read the back of the label for the Flintstones Gummies before [she] bought it." *Id*. at 204:18-22.

Regardless of Defendants' mischaracterization of Ms. Cabrera's testimony, Ms. Cabrera is a non-party to this litigation and her testimony has absolutely no bearing on the Parties' claims, defenses, on Plaintiff Woods' discovery efforts, or the issues presented here.

***ii. Ms. Woods Has Complied With Her Discovery Obligation***

Defendants also mischaracterize Plaintiff Woods' discovery efforts and her compliance with the Federal Rules of Civil Procedure. Plaintiff outlines the relevant discovery timeline and her discovery efforts below.

On September 16, 2019, Defendants served substituted Plaintiff with Interrogatories and Document Requests. Heikali Decl. at ¶ 3. In compliance with the Court's current scheduling order (Dkt. No. 75), Plaintiff served her discovery responses on October 16, 2019. *Id.* at ¶ 4. As required by Fed. R. Civ. P. 33 and 34, Plaintiff's responses specifically stated her objections to each request, specifically asserted whether she was withholding documents or information in conjunction with the objections, and responded to the requests subject to those objections. *See* Fed. R. Civ. P. 33 ("The grounds for objecting to an interrogatory must be stated with specificity.");

Fed. R. Civ. P. 34 ("An objection must state whether any responsive materials are being withheld on the basis of that objection.") For example, in response to Interrogatory No. 9 (about all multivitamins purchased by Plaintiff and her family members), Plaintiff objected as follows:

> Plaintiff further objects to this Interrogatory and ***will not respond to this Interrogatory to the extent it seeks information regarding products not related to this underlying Action***, as the Interrogatory is not relevant to any party's claim or defense and is not proportional to the needs of this case.

*See* Heikali Decl. at ¶ 20, Ex. 5 (Response to Interrogatory No. 9) (emphasis added).

And in response to Request for Production of Documents No. 4 (all relating to multivitamins in Plaintiff's possession), Plaintiff made the following objection:

> Plaintiff incorporates herein by specific reference each of the aforementioned General Objections. ***Plaintiff further objects to this Request on the grounds that, to the extent it seeks Documents regarding products not related to this underlying Action, the Request is not relevant to any party's claim or defense and is not proportional to the needs of this case***. Plaintiff further object to this Request to the extent it seeks documents regarding purchases Plaintiff did not make. Plaintiff further objects to this Request on the ground that, to the extent it seeks documents regarding products purchased by non-parties, the Request is not relevant to any party's claim or defense and is not proportional to the needs of this case. Plaintiff further objects to this Request as it is overbroad as to the scope of time and documents requested. Plaintiff further objects to the extent the phrase "family members" is undefined, vague and ambiguous. ***Plaintiff is withholding documents based on these objections.***

*See* Response to Request for Production of Documents No. 4, Lally Decl., at Ex. K (emphasis added).

Subsequently, on October 24, 2019, Plaintiff supplemented her Interrogatory Responses in accordance with Fed. R. Civ. P. 26(e). Plaintiff's supplemental response again noted the same objections as to relevance and that Plaintiff was withholding certain information based on those objections. *See* Plaintiff's Supplemental Responses To Interrogatories, Lally Decl., at Ex. J.

Despite being put on advance notice on three separate occasions, Defendants failed to follow up on or otherwise respond to Plaintiff's objections regarding her

appropriate and explicit withholding of documents. Heikali Decl. at ¶ 5. Had Defendants followed up, Plaintiff's counsel would have been more than willing to meet and confer with Defendants to thoroughly explain Plaintiff's objections and note which documents she was withholding. *Id.* at ¶ 6.[6]

***iii. Plaintiff's Deposition***

Over a month after being put on notice of Plaintiff's objections and withholding of documents, during the deposition of Ms. Woods, Defendants finally learned that they had overlooked Plaintiff's written responses, which fully comply with the Federal Rules of Civil Procedure. *Id.* at ¶ 7. After the deposition, Defendants immediately demanded that Plaintiff produce all documents regarding other dietary supplements purchased. *Id.* During the deposition, Defendants also learned that Plaintiff had come into contact with Plaintiff's counsel after viewing a Facebook advertisement and filling out an online intake questionnaire. *Id*. at ¶ 8. Therefore, after the deposition, Defendants demanded production of the Facebook advertisement, the online intake questionnaire, all responses to the questionnaires, and sought to re-depose Plaintiff on her initial intake call with Plaintiff's counsel. *Id.* To be clear, neither Defendants' Interrogatories nor their Requests for Production of Documents sought information or documents on how Ms. Woods came in contact with Plaintiff's counsel.

Further, as with Ms. Cabrera, Defendants also mischaracterize Plaintiff Woods' testimony. For example, Defendants state that it is "clear that Ms. Woods has no concern or problem with the purportedly 'missing' vitamins" when she testified that she purchased another multivitamin product with the same vitamin profile as the Products at issue here (i.e., the Equate product). First, Plaintiff's testimony unambiguously demonstrates that the missing vitamins, and the complete representation on the Products, are material to her. *See e.g.*, Lally Decl., at Ex. L, 132:20-22:

[6] Indeed, the purpose of the 2015 amendment to Fed. R. Civ. P. 34, which requires that a party explicitly state whether anything is being withheld, is to "alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection." Fed. R. Civ. P. 34 advisory committee's note to 2015 amendment.

20 Q: So how did you choose the Flintstones product

21 over all the other ones on the shelf?

22 A: Because it said, 'complete.'

Second, Defendants' implication that Plaintiff knowingly purchased a multivitamin product with the same vitamin profile as Flintstones is also contradicted by the record. *Id.* 157:8-14 (testifying that she did not compare the ingredients in the Flintstones product to the Equate product). Third, when asked about the Equate product, Plaintiff testified that when she purchased the product, she no longer trusted "Complete" representations. *Id.* at 156:23-25, 157:1-2:

23 Q: Okay. And why did you choose Equate?

24 A: Because by me purchasing the Flintstones

25 with the complete, it did not – I didn't trust that

[Page 157]

1 any of the other vitamins, if it said, 'complete'

2 that it was true[.]) Ironically, Defendants fault Plaintiff for not purchasing a "Complete" multivitamin product after deceiving her on the representation and destroying her trust in what "Complete" means.

***iv. Meet And Confer Efforts And Resolution Of Issues***

Counsel for the Parties have met and conferred extensively about several discovery disputes raised by Defendants after the deposition, including the ones mentioned above. *Id.* at ¶ 9. As to Defendants' dispute regarding documents about other multivitamins purchased, Plaintiff's counsel pointed Defendants to their repeated oversight of Plaintiff's proper objections and withholding of documents in her discovery responses. *Id.* at ¶ 10. Plaintiff also referred Defendants to the fact that they have made a substantially similar relevance objection earlier and have redacted and/or withheld tens of thousands of documents about competitor products and other

multivitamin products manufactured by Bayer.[7] *Id.*; *see also*, Ex. 1 to Heikali Decl., Defendants' Response to Plaintiffs' Request for Production of Documents, Set One, General Objection No. 8 ("Bayer objects to each and every request on the ground and to the extent that it is not limited to… the only Products at issue."). Defendants cannot have it both ways.

Plaintiff's counsel also explained that there was no witness coaching during breaks and that Defendants have failed to point to any sign of witness coaching. *Id.* at ¶¶ 11-12. Plaintiff's counsel also offered to provide declarations from Ms. Woods and Plaintiff's counsel evidencing the fact that there was no witness coaching during the deposition breaks, a proposal that was rejected by Defendants. *Id.* at ¶¶ 12-13, Exs. 2-3. Moreover, Plaintiff's counsel contended that the Facebook advertisement, the online intake questionnaire, and the responses to the questionnaire were unresponsive to any of Defendants' requests and, in any event, were privileged and/or protected materials. *Id.* at ¶ 14. However, as a compromise, Plaintiff's counsel was willing to produce the questionnaire for the limited purpose of demonstrating that subsequent intake responses and initial calls with potential clients are privileged. *Id.* Defendants rejected this proposal. *Id.*

Ultimately, the Parties were able to reach resolution on a number of issues. *Id.* at ¶ 15. First, in the spirit of compromise and to avoid needless discovery disputes, Plaintiff has produced all images of bottles and proof of purchase of other multivitamins purchased by Plaintiff, subject to her maintained objections. *Id.* at ¶ 16. Plaintiff's counsel went above and beyond by having Plaintiff take numerous *additional* photos of the products she purchased. Second, Plaintiff has produced the Facebook advertisement and the online intake questionnaire so that Defendants could assess whether the initial intake responses and initial calls with potential clients are privileged. *Id.* at ¶ 17. A copy of the Facebook advertisement and online intake questionnaire produced to

[7] Contrary to Defendants' claim that "after negotiations with Plaintiff, Bayer in fact did produce information about other children's multivitamins" (n. 5), there are still thousands of documents about potentially highly relevant competitor and/or Bayer multivitamin products withheld entirely or redacted on the basis of relevance.

Defendants is attached to the Heikali Decl. at ¶ 17, Ex. 4. Moreover, while Plaintiff believes a second deposition is not warranted or required as she has complied fully with her duties under the Federal Rules of Civil Procedure, in the spirit of compromise, Plaintiff's counsel offered to present Plaintiff for a limited second deposition subject to further meet and confer among the parties as to the precise scope and timing of a second deposition. *Id.* at ¶ 18.

Despite reaching resolution on the foregoing issues, Defendants have chosen to file this needless discovery dispute and have dedicated a majority of their submission discussing irrelevant or now-resolved issues. It is clear that Defendants seek another deposition to harass Plaintiff, who is a single mother with a full-time job.

**B. Plaintiff Does Not Need To Supplement Her Interrogatories**

Despite deposing Plaintiff and obtaining information regarding other multivitamin purchases not at issue in this litigation, Defendants argue that Plaintiff's interrogatories are deficient as Plaintiff "has not updated the plainly false interrogatory responses." However, Defendants obtained this information during Plaintiff's deposition, and therefore, Plaintiff has no duty to superfluously supplement her responses. *See* Fed. R. Civ. P. 26(e)(1)(a) (establishing that the duty to supplement is triggered only when " the additional or corrective information has not otherwise been made known to the other parties during the discovery process."); *see also Nuance Commc'ns, Inc. v. ABBYY Software House*, No. C 08-02912 JSW (MEJ), 2012 WL 2838431, at *1 (N.D. Cal. July 10, 2012) ("In fact, both the Advisory Committee and leading commentators indicate that the incidental discovery, *particularly during a deposition*, of information ordinarily subject to supplementation satisfies the Rule 26(e)(1) duty as sufficiently as a formal filing[.]") (emphasis added) (quotation marks and citation omitted).

**C. Plaintiff's Counsel Did Not Obstruct The Deposition Of Ms. Woods**

Without citing any specific examples, Defendants contend that Plaintiff's counsel "obstructed the examination of Ms. Woods[.]" In support, Defendants only allege that

there were "373 separate objections of Plaintiff's counsel in the span of three hours and 33 minutes on the record (most of which were improper speaking objections)." However, this is plainly unsupported by the record itself. On Plaintiff's counsel's count, roughly 294 of the 373 objections made by Plaintiff's counsel were stated as just "objection," 32 separate objections were stated as objections to form (e.g., "objection; form"), 13 separate objections were instances in which the specific objection to form was provided (e.g., "objection, asked and answered" or "argumentative"), and 28 separate objections were objections to privilege. Heikali Decl. at ¶ 19. These four categories alone total nearly ***98%*** of the objections made. Defendants' accusations are clearly baseless.

**D. There Was No Witness Coaching During Deposition Breaks**

Defendants also accuse Plaintiff's counsel of "witness coaching" and "improper conferences" during Plaintiff Woods' deposition breaks and seek a second deposition to invade on confidential attorney client communications during those breaks. As an initial general matter, under California privilege law,[8] communications between a client and counsel are confidential and protected from disclosure. *See* Cal. Evid. Code 954. "Once the party asserting the privilege makes this initial showing [of privilege], the burden shifts to the party opposing the privilege to show either that the information was not confidential or that it falls within an exception." *F.D.I.C. v. Fid. & Deposit Co. of Md.*, 196 F.R.D. 375, 380 (S.D. Cal. 2000). Because Defendants seek communications between Plaintiff and her counsel, Defendants bear the burden of demonstrating that disclosure will not violate the attorney client privilege. In support, Defendants sweepingly argue that "California law is abundantly clear that Bayer is entitled to ask about the content and extent of discussions during a break in the deposition." However, the case law cited by Defendants do not stand for such proposition. Indeed, they are entirely inapposite as they address the unique circumstances where a party either (1)

[8] Although this action is in federal court, the Court should apply California state privilege law. *See* Fed. R. Evid. 501 ("In civil actions and proceedings with respect to an element of a claim or defense as to which state law supplies the rule of decision, the privilege of a witness ... shall be determined in accordance with state law.")

interrupts questions to take a break in order to confer with his or her lawyer about answers, and/or (2) changes his or her responses dramatically after a break.

For example, in *In re Cathode Ray Tube*, the court observed that (1) counsel for the witness "insisted on stopping [the deposition] over the objection of DPPs' counsel who wanted to finish his line of questioning…before taking a break"; and that (2) the witnesses' responses "were notably more circumspect and uninformative after the break."[9] *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058-SC, 2015 WL 12942210, at *1-2 (N.D. Cal. May 29, 2015), report and recommendation adopted, No. C-07-5944-SC, 2015 WL 13653876 (N.D. Cal. Sept. 11, 2015), and report and recommendation adopted, No. C-07-5944-SC, 2015 WL 13653877 (N.D. Cal. Oct. 28, 2015). Accordingly, the court found that there may have been coaching during the break and for this reason alone, permitted a second deposition on the "contents of his conversations with counsel during the break."[10] *Id.* at *2-3.

Defendants have provided no evidence or other indicia that there was witness coaching, any suggesting of answers, or any other substantive discussion about Plaintiff's testimony, during the breaks. That is because there was none, as the record demonstrates. Counsel for Plaintiff ***did not*** coach Plaintiff during the breaks.[11] *See* Heikali Decl. at ¶ 11. Moreover, Plaintiff's responses to questions did not change, let alone change drastically, after breaks, and none of the breaks were taken with questions pending (*see, e.g.*, Lally Decl., at Ex. L, 108:3-7). Indeed, of the six breaks taken during the deposition, a majority were taken at Defendants' request (*see, e.g.*, *id*. at 57:9,

---

[9] Moreover, the parties in *In re Cathode Ray Tube* had explicitly "agreed in advance not to allow breaks during a question or a line of questions." *Id.* at *3.

[10] Moreover, *Vestin Realty* is not a decision about witness coaching ***during breaks*** and therefore has no bearing on this dispute. *See Vestin Realty Mortg. II, Inc. v. Klaas*, No. CIV. 08CV2011 LAB, 2010 WL 4259946, at *3-4 (S.D. Cal. Oct. 25, 2010) (issue before the court was the nature of objections made during the deposition).

[11] Defendants contention that Plaintiff's counsel also coached former plaintiff Ms. Cabrera during her deposition is irrelevant here and also baseless, as discussed above in Section II.A.i. Indeed, Defendants fail to cite a single fact which supports this contention.

148:19-21, 193:3-5, 230:19-21)[12]; *compare with In re Stratosphere Corp Sec. Litig*, 182 FRD 614, 620-21 (D. Nev. 1998) ("If [the break is] requested by the deponent or deponent's counsel, and the interrogating attorney is in the middle of a question, or is following a line of questions which should be completed, the break should be delayed until a question is answered or a line of questions has been given a reasonable time to be pursued.")

Defendants' argument relies on pure speculation and therefore should be rejected. *Del Sol v. Whiting*, No. CV-10-01061-PHX-SRB, 2015 WL 12090268, at *6 (D. Ariz. Mar. 10, 2015) ("The Court also rejects Plaintiffs' related argument that they are entitled to additional deposition time to question Senator Pearce about coaching they believe he received on breaks in the first deposition. Plaintiffs rely entirely on speculation to support this theory. Plaintiffs' counsel did not observe any impropriety, nor does this argument implicate any off-the-record discussion."); *In re Flonase Antitrust Litig.*, 723 F. Supp. 2d at 766 ("Absent evidence of witness coaching by defendant or any other form of misconduct, I deny plaintiff's motion to compel.")

Plaintiff's counsel has repeatedly reassured counsel for Defendants that there was no coaching during the breaks. As a compromise for this dispute, Plaintiff's counsel even offered to provide a declaration from himself and Plaintiff attesting to the fact that no coaching occurred during the breaks. *See* Heikali Decl. at ¶ 12, Ex. 2. However, Defendants rejected the proposal outright, saying "that simply does not cure the issue…we want to hear Ms. Woods's words, not yours." *Id.* at ¶ 13, Ex. 3. This of course ignores Plaintiff's offer to provide a declaration from Plaintiff herself. Accordingly, the Court should reject Defendants' request.

---

[12] The deposition transcript reflects that Plaintiff and Plaintiff's counsel requested a break at 67:2-7. For purposes of clarification, the Parties took a break because Plaintiff had become emotional after counsel for Defendants asked a question about Plaintiff's mother, who had recently passed away. *See* Lally Decl., at Ex. L, 67:2-7. Moreover, the other instance where counsel for Plaintiff requested a break was consented to by counsel for Defendants and was not taken in the middle of a pending question. *See id.* at 108:3-7.

**E. <u>The Responses To The Online Intake Questionnaire And Ms. Woods' Initial Call With Plaintiffs' Counsel Are Privileged</u>**

Defendants further demand that they are entitled to respondents' confidential responses to the online intake questionnaire and to question Plaintiff regarding her initial intake phone call with her legal counsel. Defendants' demand seeks information directly at the heart of the attorney-client privilege and as "[t]he opponent of the privilege," Defendants have "the burden of showing that the answers to the [online] questionnaires were not intended to be confidential." *See Barton v. U.S. Dist. Court for Cent. Dist. of Cal.*, 410 F.3d 1104, 1110 (9th Cir. 2005) (reversing district court and holding that communications in response to an online questionnaire were privileged when the questionnaire demonstrates that respondents are engaging in confidential communications and may potentially be involved in a lawsuit). As established below, the questionnaire's explicit representations that respondents' submissions were confidential and could lead to potential representation in a class action lawsuit unequivocally establish that their responses and subsequent communications with counsel are both privileged.

Indeed, the blank questionnaire, which was produced to Defendants, demonstrates that any response to the questionnaire or subsequent communications following those responses, such as Plaintiff's call with counsel to gain more information about this case, would involve confidential communications which fall squarely into the type of communications protected by the attorney client privilege. *See* Heikali Decl. at ¶ 17, Ex. 4. For example, the questionnaire explicitly references that the investigation was related to an active lawsuit and that, if the individual viewing the questionnaire submitted a response, they "may qualify to participate in a class action lawsuit" and that "a member of our team will contact you to discuss the details of your potential case[.]" *Id.* The questionnaire further states that all the communications and information exchanged between legal counsel and the respondents would be "confidential" and that respondents' submissions could involve "potential representation." *Id.*

This explicit acknowledgement of confidentiality and that respondents may become clients in a lawsuit squarely places any responses to the questionnaire, and any subsequent communications, into the field of privilege attorney-client communications. *See Barton*, 410 F.3d at 1111-12 (holding that when there is an "acquisition by the lawyer of information that would be confidential were there to be representation, the privilege applies.") (citing *SpeeDee Oil Change Sys.*, 20 Cal. 4th 1135 (1999)). Further, as the questionnaire's main purpose is to connect potential clients with legal representation to discuss a potential lawsuit, the respondents' submissions are for the purpose of seeking legal advice and are therefore privileged. *Edwards Wildman Palmer LLP v. Super. Ct.*, 231 Cal. App. 4th 1214, 1226 (2014) ("An attorney-client relationship exists for purposes of the privilege whenever a person consults an attorney for the purpose of obtaining the attorney's legal service or advice."); *see also Barton*, 410 F.3d at 1111 (9th Cir. 2005) (same, holding that the privilege can "precede the lawyer's acceptance of the client.")

Even Defendants' authority demonstrates that such communications are privileged. For example, while the court in *Taylor v. Waddell & Reed, Inc.*, No. CIV. 09-2909-AJB WVG, 2011 WL 1979486, at *3 (S.D. Cal. May 20, 2011) found that client communications were not privileged because "there was no effort whatsoever to convey even the impression" that an attorney-client relationship could be established, the questionnaire in this case conveys precisely the opposite message. Indeed, *Taylor* recognizes this distinction, explaining that in *Barton*, communications in response to a questionnaire were privileged when "the *Barton* website was seeking individuals who had been harmed by a pharmaceutical product and the impression was conveyed, despite specific language to the contrary, that anyone who responded may become a client in a class action lawsuit." *Id.* Unlike in *Taylor*, the questionnaire here contains no language explicitly or implicitly disclaiming potential representation. To the contrary, the questionnaire makes clear that the purpose of the questionnaire was potential representation in an active class action lawsuit, stating that respondents "may qualify to

participate in a class action lawsuit." Therefore, Plaintiff's and respondents' post-questionnaire communication with legal counsel falls squarely within *Barton* and are protected by the attorney-client privilege.

Defendants' arguments that Ms. Woods' initial call following her response to the questionnaire are not privileged is equally unavailing for similar reasons. For example, Defendants' sole justification for claiming that Ms. Woods' communications with her attorneys are not covered by the attorney client privilege is a short excerpt from her deposition, where she stated that she "wasn't thinking about" retaining an attorney when she received the phone call, but instead, she wanted to obtain information about the case. *See* Lally Decl., at Ex. L, 158:2-6. Defendants' position relies on a mistaken understanding of the attorney-client privilege.

Indeed, the privilege is not limited to situations where prospective clients are solely seeking to obtain legal representation. Rather, the Ninth Circuit explicitly stated that consultation for the purposes of retaining are lawyer are only one of multiple forms of privileged communications which can occur prior to the establishment of the attorney-client relationship. *See Barton*, 410 F.3d at 1111 (9th Cir. 2005) (holding that the privilege can attach for a "person who consults a lawyer for the purposes of 'retaining the lawyer,' 'securing legal service,' ***or securing 'advice.'*** All three can precede the lawyer's acceptance of the client.") (emphasis added); *see also People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1148 (1999) ("When a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established *prima facie*."). Defendants reference the questionnaire's disclaimer that it "does not create an attorney-client relationship" to argue that no privilege exists. However, their reference to that disclaimer is misguided because the privilege can attach prior to the formation of the attorney-client relationship and can further attach for the sole purpose of securing advice. Indeed, such was the case in *Barton*, where the "check box on the law firm's website […] require[d] the questionnaire submitter […] to acknowledge that the submitter is not 'forming an

attorney client relationship' by sending in answers," but the website did "not disclaim the purpose of 'securing legal advice.'" *Barton*, 410 F.3d at 1111. The same applies here, particularly considering that the Flintstones questionnaire states that respondents will be contacted "to discuss the details of your potential case." *See* Heikali Decl. at ¶ 17, Ex. 4.

As Plaintiff's testimony and the plain wording of the questionnaire make clear, Plaintiff and all other respondents were securing advice after reading about the lawsuit mentioned on a legal advertisement and subsequently filling out their information on a legal intake questionnaire. *See, e.g.*, Lally Decl., at Ex. L, 52:18-25, 53:1-4 (testifying that the initial call was a "preliminary discussion" into the lawsuit); *id.* at 158:2-6 (testifying that the initial call was to gain "information" regarding the lawsuit). Because Plaintiff decided to contact legal counsel to obtain legal advice and information regarding the lawsuit, this communication is privileged. *Barton*, 410 F.3d at 1111 ("Prospective clients' communications with a view to obtaining legal services are plainly covered by the attorney-client privilege under California law, regardless of whether they have retained the lawyer, and regardless of whether they ever retain the lawyer.")

While Defendants provide out of circuit case law for their argument that Plaintiff was not seeking legal advice, their authorities do not support that position. *See, e.g.*, *Schiller v. City of N. Y.*, 245 F.R.D. 112, 116 (S.D.N.Y. 2007) (finding that questionnaire did not lead to privileged communications when "[t]he form says nothing about the provision of legal services" and "the questionnaire was not presumed to be confidential.") Indeed, the court in *Schiller* even stated that "[a]n attorney-client relationship may be established in connection with the use of a questionnaire distributed to multiple potential clients" when there are "indicia of the clients' understanding that an attorney-client relationship was anticipated." *Id.; see also Morisky v. Pub. Serv. Elec. & Gas Co. ("PSE&G")*, 191 F.R.D. 419, 422 (D.N.J. 2000) (finding that no privilege was attached to communications when client "was under the impression that

the questionnaires were information only, and not being used for litigation.") As demonstrated above, the questionnaire is solely dedicated to the provision of legal services, explicitly references that the communications were confidential, and expressly stated that a potential attorney-client relationship may subsequently form.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to compel and deny Defendants' request to seek communications during Ms. Woods' deposition breaks, the responses to the online intake questionnaire, and communications during Ms. Woods' initial intake call with Plaintiff's counsel.

Respectfully Submitted,

Dated: _December 6, 2019

FARUQI & FARUQI, LLP

By: */s/ Benjamin Heikali*

Benjamin Heikali (SBN 307466)
bheikali@faruqilaw.com
10866 Wilshire Boulevard
Suite 1470
Los Angeles, CA 90024
Telephone: 424.256.2884
Facsimile: 424.256.2885

*Attorneys for Plaintiff Sonnetta Woods*

Dated: _December 6, 2019

SIDLEY AUSTIN LLP

By: */s/ Amy P. Lally*

Amy P. Lally (SBN 198555)
alally@sidley.com
1999 Avenue of the Stars 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Facsimile: 310.595.9501

*Attorneys for Defendants Bayer Corporation, and Bayer HealthCare LLC*

**ATTESTATION**

I, Amy P. Lally, and the ECF User whose ID and password are being used to file this document in accordance with Civil Local Rule 5-4.3.4. Concurrence with and authorization for the filing of this document has been obtained from Benjamin Heikali, counsel for Plaintiff, and I shall maintain records to support this concurrence and authorization for subsequent production for the Court, if so ordered, or for inspection upon request by a Party.

Dated: December 6, 2019

SIDLEY AUSTIN, LLP

By: */s/ Amy P. Lally*

Amy P. Lally (SBN 198555)
alally@sidley.com
1999 Avenue of the Stars 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Facsimile: 310.595.9501

*Attorneys for Defendants Bayer Corporation, and Bayer HealthCare LLC*