Benjamin Heikali (SBN 307466)
*bheikali@faruqilaw.com*
Joshua Nassir (SBN 318344)
*jnassir@faruqilaw.com*
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, California 90024
Telephone: 424.256.2884
Facsimile: 424.256.2885

Aubry Wand (SBN 281207)
awand@wandlawfirm.com
**THE WAND LAW FIRM, P.C.**
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone: (310) 590-4503
Facsimile: (310) 590-4596

*Attorneys for Plaintiff and the Putative Classes*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMILLE CABRERA, individually and on behalf of all others similarly situated, | Case No. 2:17-cv-08525 JAK (JPRx) |
| Plaintiff, | **REDACTED PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | **Complaint filed:** 11/22/2017<br>**Complaint served:** 12/04/2017 |
| BAYER HEALTHCARE LLC and BAYER CORPORATION, | Date: April 20, 2020<br>Time: 8:30 A.M.<br>Place: Courtroom 10B |
| Defendants. | Hon. John A. Kronstadt |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................1

II.  STATEMENT OF FACTS ....................................................................2

   A.  The Products Have Uniformly Displayed The "Complete" Representation At the Point Of Sale But Have Not Contained The Missing Vitamins ................... 2

   B.  Plaintiff And Class Members Are Deceived By The "Complete" Representation ................................................................................ 3

   C.  The Belief That The Products Contain All Of The Essential Vitamins Is Material To Plaintiff and Consumers .............................................. 5

   D.  Consumers Pay A Price Premium For The Products Based On The "Complete" Representation ........................................................... 6

   E.  Plaintiff Has Proffered a Viable Damages Model Based On Her Theory of Liability ....................................................................................... 8

III.  ARGUMENT ......................................................................................9

   A.  The Rule 23 Requirements Are Satisfied ..................................... 10

      1.  Rule 23(a)(1) – Numerosity .................................................. 10

      2.  Rule 23(a)(2) Commonality / Rule 23(b)(3) Predominance ....................... 11

      3.  Rule 23(a)(3) - Typicality .....................................................21

      4.  Rule 23(a)(4) - Adequacy .....................................................23

      5.  Rule 23(b)(2) Injunctive Relief ...........................................24

IV.  CONCLUSION ..................................................................................25

-i-

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; No. 2:17-cv-08525 JAK (JPRx)

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                    **Page(s)**

3

*Allen v. Similasan Corp.*,

4
   306 F.R.D. 635 (S.D. Cal. 2015) ........................................................ 11

5

*Armstrong v. Davis*,

6
   275 F.3d 849 (9th Cir. 2001), .............................................................. 21

7

*Astiana v. Kashi Co.*,

8
   291 F.R.D. 493 (S.D. Cal. 2013) ........................................................ 20

9

*Ballard v. Equifax Check Servs., Inc.*,

10
   186 F.R.D. 589 (E.D. Cal. 1999) ........................................................ 21

11

*Beck-Ellman v. Kaz USA, Inc.*,

12
   283 F.R.D. 558 (S.D. Cal. 2012) ................................................. 20, 22

13

*Brazil v. Dell Inc.*,
   No. C-07-01700 RMW, 2010 WL 5387831 (N.D. Cal. 2010) ........................... 16

14

15

*Brazil v. Dole Packaged Foods, LLC*,
   No. 12-cv-01831-LHK, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) ............... 18

16

*Briseno v. ConAgra Foods, Inc.*,

17
   674 F. App'x 654 (9th Cir. 2017) ....................................................... 18

18

*Chavez v. Blue Sky Natural Beverage Co.*,

19
   268 F.R.D. 365 (N.D. Cal. 2010) ................................................... 9, 17

20

*Claiborne v. Church & Dwight Co., Inc.*,
   No. 3:17-cv-00746-L-JLB, 2017 WL5256752 (S.D. Cal. Nov. 13,

21
   2017) ...................................................................................... 24, 25

22

*Comcast Corp. v. Behrend*,

23
   569 U.S. 27 (2013) .................................................................... 17, 19

24

*Davidson v. Kimberly-Clark Corp.*,

25
   889 F.3d 956 (9th Cir. 2018) ....................................................... 24, 25

26

*Ellis v. Costco Wholesale Corp.*,

27
   657 F.3d 970 (9th Cir. 2011) ....................................................... 10, 22

28

-ii-

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF; No. 2:17-cv-08525 JAK (JPRx)

*In re Emulex Corp. Sec. Litig.*,
   210 F.R.D. 717 (C.D. Cal. 2002)...................................................................23

*In re First All. Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ......................................................................15

*Forcellati v. Hyland's, Inc.*,
   No. CV 12-1983-GHK, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)........... 13, 22

*Forrand v. Fed. Exp. Corp.*,
   No. CV 08-1360 DSF, 2013 WL 1793951 (C.D. Cal. Apr. 25, 2013) ...............17

*Guido v. L'Oreal, USA, Inc.*,
   284 F.R.D. 468 (C.D. Cal. 2012)...................................................................22

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir.1998) ................................................................22, 23

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ......................................................................16

*In re Hyundai & Kia Fuel Econ. Litig.*,
   881 F.3d 679 (9th Cir. 2018) .....................................................................9, 10

*Johns v. Bayer Corp.*,
   280 F.R.D. 551 (S.D. Cal. 2012) .............................................................13, 17

*Jt. Equity Comm. of Inv'rs of Real Estate Partners, Inc. v. Coldwell
   Banker Real Estate Corp.*,
   281 F.R.D. 422 (C.D. Cal. 2012)...................................................................16

*Kumar v. Salov N. Am. Corp.*,
   No. 14-CV-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15,
   2016) ........................................................................................................11

*In re Lidoderm Antitrust Litig.*,
   No. 14-MD-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21,
   2017) ........................................................................................................10

*Litty v. Merrill Lynch & Co.*,
   No. CV 14-0425 PA, 2015 WL 4698475 (C.D. Cal. Apr. 27, 2015)..................11

*Mazza v. Am. Honda Motor Co.*,
   254 F.R.D. 610 (C.D. Cal. 2008)...................................................................21

*Menagerie Prods. v. Citysearch*,
   No. CV 08-4263 CAS (FMO), 2009 WL 3770668 (C.D. Cal. Nov. 9, 2009) ............................................................................... 21

*In re NJOY, Inc. Consumer Class Action Litig.*,
   120 F. Supp. 3d 1050 (C.D. Cal. 2015) ................................. 12

*Schwarm v. Craighead*,
   233 F.R.D. 655 (E.D. Cal. 2006) ......................................... 15

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .............................................. 21

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) ..................................... 9, 13

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
   267 F.R.D. 583 (N.D. Cal. Mar. 28, 2010) ........................... 22

*Vaquero v. Ashley Furniture Indus., Inc.*,
   824 F.3d 1150 (9th Cir. 2016) ............................................ 18

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) ............................................ 24

*Wiener v. Dannon Co.*,
   255 F.R.D. 658 (C.D. Cal. 2009) .................................... 16, 21

*Zakaria v. Gerber Prods. Co.*,
   No. LACV1500200 JAK (Ex), 2016 WL 6662723 (C.D. Cal. Mar. 23, 2016) ...................................................................... 15

**Other Authorities**

F.R.C.P. 23(a) ............................................ 1, 9, 10, 11, 21, 23

F.R.C.P. 23(b) ................................................ 1, 10, 17, 24

-iv-

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; No. 2:17-cv-08525 JAK (JPRx)

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on April 20, 2020 at 8:30 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable John A. Kronstadt of the United States District Court for the Central District of California, located at 350 W. First Street, Courtroom 10B, Los Angeles, CA 90012, Plaintiff Sonnetta Woods ("Plaintiff"), on behalf of herself and all others similarly situated consumers, will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 23, for an order certifying the following Classes:

> All persons who purchased any Flintstones™ Gummies Complete Children's Multivitamin Supplement, which did not include Vitamins $B_1$, Vitamin $B_2$, Vitamin $B_3$, and Vitamin K, in California at any time from November 22, 2013 until the present ("Regular Gummies Class Period") ("Regular Gummies Class").

> All persons who purchased any Flintstones™ Sour Gummies Complete Children's Multivitamin Supplement, which did not Vitamins $B_1$, Vitamin $B_2$, Vitamin $B_3$, and Vitamin K, in California at any time from November 22, 2013 until December 31, 2017 ("Sour Gummies Class Period") ("Sour Gummies Class") (collectively with the Regular Gummies Class Period, the "Class Periods") (collectively with the "Regular Gummies Class", the "Classes").

Plaintiff further will and hereby does move the Court for an Order designating her as a Class representative and appointing her counsel, Faruqi & Faruqi, LLP and The Wand Law Firm P.C., as Class counsel.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 14, 2020. This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, Declarations, and and [Proposed] Order submitted herewith.  In addition to relying on these documents and Rule 23 of the Federal Rules of Civil Procedure, Plaintiff also intends to rely on any pleadings and documentary evidence she files in connection with her reply brief filed in support of the motion, as well as any argument or documentary evidence as

1   may be presented at the class certification hearing, and the complete pleadings and

2   filings in this action.

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

## I.   INTRODUCTION

Plaintiff's theory of the case is straightforward and provable on a class-wide basis: Bayer's "Complete" representation on its Flintstones Gummies multivitamin products deceives reasonable consumers into believing the products contain a complete profile of vitamins when they are missing four of the 13 vitamins.

All Class members have been uniformly exposed to the deceptive "Complete" representation because the word "Complete" was prominently displayed on the front of the Products' labels during the entirety of both Class Periods.  Dr. J. Michael Dennis, one of Plaintiff's experts, has conducted a consumer perception survey demonstrating that common evidence can prove consumer deception (i.e., that reasonable consumers, objectively, are deceived by the "Complete" representation). Dr. Dennis' perception survey also demonstrates the materiality of the "Complete" representation (i.e., the belief that the Products contain all the essential vitamins was an important factor in consumers' decisions to purchase them). In addition, Dr. Dennis performed a conjoint analysis, demonstrating that the "Complete" representation commands a price premium in the market for the Products. Dr. Kevin W. Caves, Plaintiff's second expert, mechanically applied the price premium to the pertinent sales data to calculate aggregate class-wide damages.

In short, all the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, namely, numerosity, commonality, typicality, adequacy, predominance, and superiority are satisfied. Accordingly, Plaintiff respectfully requests that this Court certify both of the proposed Classes pursuant to Rule 23(b)(3). Plaintiff also respectfully requests that the Court certify the Regular Gummies Class as an injunctive relief class pursuant to Rule 23(b)(2), as Bayer has failed to remedy its deceptive conduct in regard to the Regular Gummies Product.

---

[1] This Memorandum adopts all definitions and descriptions of the Classes in the Notice of Motion.

## II.   <u>STATEMENT OF FACTS</u>

### A.   **The Products Have Uniformly Displayed The "Complete" Representation At the Point Of Sale But Have Not Contained The Missing Vitamins**

Plaintiff seeks to certify a Class of purchasers of just two products sold by Defendants Bayer Healthcare LLC and Bayer Corporation ("Bayer" or "Defendants"): Flintstones™ Gummies Complete Children's Multivitamin Supplement and Flintstones™ Sour Gummies Complete Children's Multivitamin Supplement (the "Product(s)"). The "Complete" representation is displayed prominently on the front of both Products:



First Amended Class Action Complaint ("FAC"), ECF No. 76, at ¶ 21.

Despite the Products being labeled as "Complete" multivitamins, neither of the Products contain Vitamin $B_1$ (thiamine), Vitamin $B_2$ (riboflavin), Vitamin $B_3$ (niacin), and Vitamin K (the "Missing Vitamins"). *See id.* at ¶ 22.  It is well established that there are 13 essential vitamins, which include the Missing Vitamins. The U.S. Food and Drug Administration ("FDA") has stated that "[t]here are 13 vitamins that the body absolutely needs: vitamins A, C, D, E, K, and the B vitamins (thiamine, riboflavin, niacin, pantothenic acid, biotin, vitamin B-6, vitamin B-12 and folate)." *Id.* at ¶ 14 (citing https://www.fda.gov/consumers/consumer-updates/fortify-your-

knowledge-about-vitamins).   The U.S. National Institute of Health ("NIH") recognizes the same 13 vitamins.  *See* Declaration of Benjamin Heikali In Support ("Heikali Decl."), Ex. A, Ex. 5 to the Deposition Transcript of Nastaran Faghihnia ("Faghihnia Dep. Tr.").   Bayer recognize the exact same 13 vitamins.  *See also* https://www.flintstonesvitamins.com/about-our-nutrients/.   Thus, the Missing Vitamins account for over 30% of the 13 vitamins deemed to be essential by the FDA, the NIH, and Bayer itself.

During the entirety of the respective Class Periods, each of the Products uniformly bore the "Complete" representation on their labels.  *See* Heikali Decl. at Ex. B, Defendants' Objections and Responses to Plaintiff's Requests for Admission, Set One ("RFA Responses"), No. 5.  Moreover, while Bayer admits that Vitamin $B_1$, Vitamin $B_2$, Vitamin $B_3$, and Vitamin K are vitamins, neither of the Products contained any of these vitamins during the entirety of the Class Periods.[2]  *Id.* at Nos. 1-4, 7-9.

## B.   Plaintiff And Class Members Are Deceived By The "Complete" Representation

The Products' "Complete" representation is effective at convincing consumers that the Products contain a complete profile of vitamins. During the Class Periods, Plaintiff purchased both of the Products and was deceived by their "Complete" representation.  *See, e.g.*, Heikali Decl. at Ex. E, Deposition Transcript for Sonnetta Woods ("Woods Dep. Tr.") at 72:25 – 73:3 ("Q When you said you didn't think it was truthful, why -- what does that mean? What do you think is not truthful? A

---

[2] During a brief time during the Class Periods, ███████████████████████ ████████ *See* Heikali Decl. at Ex. C, BAY-FLINT-0024789 (███████████████████ ████████████████████); *see also Id.* at Ex. D, BAY-FLINT-0025029 (████████████████). In any event, this ████████████ is explicitly excluded from the Class definitions. *See* Notice of Motion, *supra.*

-3-

1  Complete -- the word 'complete.' Q And what's your basis for that? A Complete?
2  'Complete,' meaning that it has all the multivitamins that it should have.")

3      While Plaintiff did not expect any *specific* vitamin in the Products, she expected
4  a complete profile of vitamins.  *Id.* at 177:23 – 178:5.   As discussed above, the FDA
5  recognizes only 13 essential vitamins. In the Court's Order on Defendants' Motion to
6  Dismiss, the Court recognized that "the word 'Complete' on the labeling could give
7  rise to a reasonable inference or belief that the Product contains 'all' vitamins, or at
8  least '*all*' *vitamins considered essential by the FDA*.") (emphasis added). Plaintiff's
9  discovery responses are consistent in this regard.  *See* Heikali Decl. at  Ex. F,
10 Plaintiff's Second Supplemental Responses to Defendants Bayer Healthcare LLC and
11 Bayer Corporation's First Set of Interrogatories on Substituted Plaintiff, Response to
12 Interrogatory No. 1 (stating that Plaintiff understands the Complete representation "to
13 mean that the Flintstones Gummies would include every vitamin that experts in the
14 field of vitamins would consider a 'vitamin'".)  Therefore, Plaintiff's understanding
15 of "Complete" in her testimony and interrogatory responses is consistent with the
16 Court's prior Order, as well as the FDA's recognition of thirteen essential vitamins.

17     Class members have been similarly deceived. Plaintiff's expert, Dr. Dennis, has
18 conducted a survey which empirically measured consumer perception of the
19 "Complete" representation.  *See* Heikali Decl. at Ex. G, Declaration and Expert
20 Report of J. Michael Dennis, Ph.D. ("Dennis Report"), ¶ 16.   Following well-
21 established survey techniques and principles, Dr. Dennis' survey determined that
22 75.2% of consumers understand the "Complete" representation to mean that the
23 Products contain all of the essential vitamins.  *Id.* at ¶ 73.  Moreover, among
24 respondents who had been purchasing Flintstones for five or more years and answered
25 that Flintstones is their favorite brand, 82.1% perceived the "Complete"
26 representation to mean the Products contain all of the essential vitamins.  *Id.*

27
28

### C. The Belief That The Products Contain All Of The Essential Vitamins Is Material To Plaintiff and Consumers

The belief that the Products are "Complete" – i.e., that they contain all of the essential vitamins – is material to Plaintiff and other Class members in that it affects their purchasing decisions. Plaintiff's belief that the Products were "Complete" was the driving factor in her decision to purchase the Products over other products.  Woods Dep. Tr. at 132:20-22 ("Q So how did you choose the Flintstones product over all other ones on the shelf? A Because it said, 'complete.'"); *see also id.* at 133:1-10.

Dr. Dennis' perception survey also empirically tested whether the belief that a children's multivitamin product contains all of the essential vitamins is material to consumers.  *See* Dennis Report at ¶¶ 48-50.  The answer was in the affirmative. The survey demonstrated that 93.8% of respondents preferred to purchase a children's multivitamin product that had all of the essential vitamins.  *Id.* at ¶ 75.  Based on these results, Dr. Dennis concluded that the belief that the Products contain all of the essential vitamins is material to consumers.  *Id.* at ¶ 77.

There is good reason for the importance consumers ascribe to a children's multivitamin that contains a complete profile of vitamins. The Missing Vitamins are crucial to certain health needs, including blood clotting, bone health, energy metabolism and production, and digestion, as Defendants themselves acknowledge. *See* Heikali Decl. at Ex. H, Faghihnia Dep. Tr. at 73:19 – 74:11 (testimony about Vitamin K); 75:25 – 76:14, 77:1 – 77:6 (testimony about Vitamin B1); 80:16 – 81:7 (testimony about Vitamin B2); 82:23 - 83:1 (testimony about Vitamin B3).[3]

There is also evidence that Bayer was aware that consumers ascribe value to a children's multivitamin that is "Complete."  Heikali Decl., Ex. J ( ███████████████████ ██████████████████████████████████████████████████████████████████ )

---

[3] Indeed, before introducing the Flintstones Gummies products to the market, ████████ ████████████████████████  *See id*. at 125:4 – 127:3 129:9-11; *see also* Heikali Decl. at Ex. I, Ex. 16 to Faghihnia Dep. Tr. ( ██████████████████ ).

1   ██████████████████████████████████). ███████████████████████

2   ████████████████████████████████████████████████████████████

3   (*see* Faghihnia Dep. Tr. at 129:9-17) but did not have the "Complete" representation.

4   *See id.* at 161:4-16.   In 2010, the "Complete" representation was added to the

5   Flintstones Gummies despite the fact that the Products still contained only the same

6   nine vitamins.  *See id.* at 161:18-19; *see also id.* at 167:23 – 168:22; Heikali Decl. at

7   Ex. K, Ex. 21 to Faghihnia Dep. Tr. ██████████████████████████████

8   ████████████████████████████████████████████████████████████

9   ███████████████████████████████████████████████████   *See*

10  Faghihnia Dep. Tr.  at 186:15-23.   Thus, materiality is also evidenced by Bayer's

11  marketing studies and admissions.

### D.    Consumers Pay A Price Premium For The Products Based On The "Complete" Representation

14  Consumers are financially injured because they pay a price premium for the

15  Products based on the false representation that they are "Complete." Using a choice

16  based conjoint survey ("CBC"), Dr. Dennis was able to quantify the price premium

17  commanded by the Products based solely on the perception that the Products are

18  "Complete."  Dennis Report at ¶ 52.  CBC is a well-established methodology and

19  research technique used to identify the value consumers place on a specific attribute

20  of a product. CBC has been widely accepted by courts as a reliable methodology to

21  calculate a price premium for specific product attributes.  *Id.* at ¶ 51 (citing cases);

22  *see also infra* Section III.A.2.h.   Indeed, ████████████████████████████

23  ████████████████████████████████████████████████████████.

24  Dennis Report at ¶ 51.

25  To ensure that he accounted for the actual effect of the price premium

26  attributable to the "Complete" representation in the market, Dr. Dennis was careful to

27  consider supply-side factors as well as real-world market transaction information

28

-6-

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; No. 2:17-cv-08525 JAK (JPRx)

from consumer transaction data for the Products and competing products.[4]  *Id.* at ¶¶ 20, 59, 85.  For example, the CBC "took into account the fact that this product is sold in a well-developed, longstanding, stable and competitive market, through a variety of retail outlets." *Id.* at ¶ 59.  The CBC further "included market-based price points for the Defendants' Products and its competitors based on actual real-world prices that consumers have paid for the products. The actual real-world pricing of the products reflects the actual number of units sold, the costs of manufacturing, the costs for distribution, advertising, and marketing, and margin, among other supply-side factors," and "actual competing products in the marketplace identified by Defendants." *Id.*  Finally, Dr. Dennis "took into account the fact that the quantity supplied of Defendants' and competitors' products is a known fact and is fixed as a matter of history."  *Id.*  By taking these factors into account, Dr. Dennis could "reliably calculate the market-clearing price at which the Defendants' Products would have been sold in the but-for world of not using the 'Complete' descriptor." *Id.* at ¶ 85.

The results of Dr. Dennis' conjoint analysis reflect that the average economic loss (i.e., the price premium) as a result of the "Complete" representation was 22.99% for the 70 count Products and 4.85% for the 180 count Products.[5]  *Id.* at ¶ 92.  Dr. Dennis explained that because "consumers' willingness to spend decreases as the product price increases" the price premium for the more expensive 180 counts was larger than the price premium for the 70 counts.  *Id.* at ¶ 97.  Further, Dr. Dennis concluded that the price premium "for the 70-count" product is "generalizable to and

---

[4] As discussed further below, Plaintiff's damages expert, Dr. Kevin W. Caves confirmed that Dr. Dennis had adequately accounted for supply side factors.

[5] While the foregoing price premium numbers were calculated on a nationwide scale, Dr. Dennis also opined that the results are "accurately generalizable to all of Defendants' Products sold during the proposed class period in California" (*id.* at ¶ 91) and ran a sensitivity test to confirm that the price premium statistics for the California and non-California consumers were statistically indistinguishable (p>.05). *Id.* at ¶ 98.

should be used of any economic damages for the Products having 70 to 88 vitamins per container." *Id.* at ¶¶ 89, 91.  Dr. Dennis testified to the same for his calculation of the 180-count applying to the 150-250 count Products.  *Id.*

### E.     Plaintiff Has Proffered a Viable Damages Model Based On Her Theory of Liability

Using the price premiums calculated by Dr. Dennis, Plaintiff's economist and damages expert, Dr. Kevin W. Caves has proffered a viable damages model tied to Plaintiff's theory of liability that can be used to prove damages on a class-wide basis.

Before reaching his conclusions, Dr. Caves opined that CBC "is a standard economic method, well suited to quantify the value of product attributes that are not priced separately." *See* Heikali Decl. at Ex. L, Declaration and Expert Report of Kevin W. Caves, Ph.D. ("Caves Report"), at ¶ 8-11.  Dr. Caves also opined that Dr. Dennis had adequately accounted for supply side as, *inter alia*, his CBC survey "incorporated actual, market-clearing prices for both the Defendants' Products and for competing products" and because "the historic number of units actually supplied by the Defendants is known, fixed as a matter of history, and utilized for purposes of calculating my damages estimates." *Id.* at ¶ 20 (further explaining supply-side factors accounted for in Dr. Dennis' CBC survey).  Dr. Caves also accounted for supply-side factors in his aggregate damage calculations.  *Id.*

Dr. Caves' methodology for calculating damages is straightforward: aggregate class-wide can be determined by multiplying the price premiums by the annual retail dollar sales for the Products provided by IRi, Inc., a market intelligence company that tracks retail sales data. *Id.* at ¶¶ 21-23.  Adopting the Dennis Report's findings on the price premiums, Dr. Caves used the lower, more conservative nationwide price premiums in his calculations because the California price premiums calculated were statistically indistinguishable from the nationwide ones. *Id*. at ¶¶ 22-23 (citing Dennis Report at ¶ 93).  Based on this methodology, Dr. Caves calculated aggregate class-

1    wide damages in the amount of ▮▮▮▮▮▮ during the period from November 22,

2    2013 to June 30, 2019.[6] *Id.* at ¶ 24.

## III.   ARGUMENT

Public policy favors certification of consumer class actions like this one. Indeed, "because…damages in consumer cases are often small and because a company which wrongfully exacts a dollar from each of millions of customers will reap a handsome profit[,] the class action is often the only effective way to halt and redress such exploitation" *Kaltwasser v. Cingular Wireless LLC,* 543 F. Supp. 2d 1124, 1129 (N.D. Cal. 2008), aff'd, 350 F. App'x 108 (9th Cir. 2009) (internal quotations omitted).  Recognizing this policy, district courts in the Ninth Circuit routinely certify consumer class actions arising from alleged violations of consumer protection laws. *See, e.g.*, *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (certifying a California UCL and CLRA class of purchasers); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 375-80 (N.D. Cal. 2010) (certifying CLRA and UCL class based on deceptive packaging); *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2018 WL 4952519, at *21 (N.D. Cal. Sept. 25, 2018) (same).

Class certification is appropriate when the court finds that the requirements of Rule 23 are met. *First*, pursuant to Rule 23(a), the plaintiff is required to demonstrate "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *In*

---

[6] This calculation includes sales for the Sour Gummies Product from January 1, 2018 to June 30, 2019, which includes a period of time during which the "Complete" representation was removed from the Sour Gummies Product.  *See* RFA Responses at No. 5.  However, Dr. Caves testified that it is possible to determine which product UPC codes used in his calculations were for the Sour Gummies Products and to remove those data points from his calculation if asked to do so.  *See* Heikali Decl. at Ex. M, Deposition Transcript for Kevin W. Caves at 95:17 – 100:16.

*re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 690 (9th Cir. 2018) (internal quotation marks omitted).  The Court's Rule 23(a) analysis does not include "an in-depth examination of the underlying merits" of the case.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011).  Rather, this examination should only extend as to "whether common questions exist[.]"  *Id.*

      *Second*, "[a]fter carrying its burden of satisfying Rule 23(a)'s prerequisites, the plaintiff must establish that the class meets the prerequisites of at least one of the three types of class actions set forth in Rule 23(b)."  *Hyundai*, 881 F.3d at 690.  Under Rule 23(b)(3), the court may certify a class if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Further, Rule 23(b)(2) permits the court to certify a class where the party against whom the relief is sought "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2).  As discussed below, each of the requirements of Rule 23(a), (b)(2), and (b)(3) are satisfied.[7] Therefore, the proposed Classes should be certified.

## A.    The Rule 23 Requirements Are Satisfied

### 1.    <u>Rule 23(a)(1) – Numerosity</u>

      Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  Although the number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable.  *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-

---

[7] The Ninth Circuit has recently held that "the language of Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification" or require that plaintiffs identify class members.  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d. 1121, 1125-26 (9th Cir. 2017); *see also J.P. v. Sessions*, No. LACV1806081JAKSKX, 2019 WL 6723686, at *16 (C.D. Cal. Nov. 5, 2019) (Kronstadt, J.) (adopting *Briseno* for the proposition that Rule 23 "neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification.")

WHO, 2017 WL 679367, at *13 (N.D. Cal. Feb. 21, 2017). As outlined in the Caves Report at ¶ 24, which relies on IRi retail sales data, Bayer's sales for the Products during the Class Periods ████████████████████, which demonstrates that joinder is impracticable. *Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA (PJWx), 2015 WL 4698475, at *3 (C.D. Cal. Apr. 27, 2015) ("[N]umerosity is presumed where the plaintiff class contains forty or more members."). Thus, numerosity is satisfied.

### 2.   Rule 23(a)(2) Commonality / Rule 23(b)(3) Predominance

#### a.   Rule 23(a)(2) - Common Questions Of Fact And Law Exist

Common questions of law and fact permeate Plaintiff's claims, satisfying Rule 23(a)(2). "It is not necessary that '[a]ll questions of fact and law ... be common to satisfy the rule.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019(9th Cir.1998)). Instead, Rule 23(a)(2) only requires that there be at least one issue of law or fact common to the class. *Id.*

Here, common questions of law and fact lie at the heart of this action. One common question is whether the "Complete" representation on the Products' labeling plausibly deceives a reasonable consumer into believing the Products contain a complete profile of the vitamins. *See Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *4-5 (N.D. Cal. July 15, 2016) (finding "sufficient common questions of fact and law" when "[t]he central question here is whether [defendant's] labels were likely to deceive a reasonable consumer."); *Allen v. Similasan Corp.*, 306 F.R.D. 635, 644 (S.D. Cal. 2015) (holding that whether defendant's marketing of the products would deceive a reasonable consumer "is an objective test, and as such is a common question determine on a class-wide basis, and it is a question that drives the resolution of this case.") Another primary common question here is whether the "Complete" representation is material to consumers' purchasing decisions. *Broomfield*, 2018 WL 4952519, at *11 ("Because materiality

-11-

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF; No. 2:17-cv-08525 JAK (JPRx)

is an objective question based on the reasonable consumer, it is common to the class and ideal for certification.") (internal quotations omitted).

Moreover, each member of the Classes was uniformly exposed to the same "Complete" representation on the Products throughout Class Periods. *See* RFA Responses, at No. 5; *see also In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1096–97 (C.D. Cal. 2015) ("There is no question that all class members were exposed to the product packaging; this suffices to show commonality.") Thus, the commonality requirement is satisfied.

> b.     <u>Rule 23(b)(3) – Common Questions Predominate Over Individual Inquiries</u>

Rule 23(b)(3) authorizes class certification when "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). According to the Supreme Court, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud…" *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 559 (9th Cir. 2019) (same). Common questions of fact and law predominate over individual inquiries when their determination can be resolved for all members in a single adjudication. *Hanlon*, 150 F.3d at 1022. Predominance is not "a matter of nose-counting. Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1132 (9th Cir. 2016). Indeed, "even if just one common question predominates, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." *In re Hyundai*, 926 F.3d at 557-58 (internal quotation omitted).

As outlined below, the predominance requirement is satisfied for each of Plaintiff's causes of action.

c.   <u>Common Questions Predominate With Respect To Plaintiff's Consumer Protection Claims</u>

Plaintiff's California consumer protection claims are subject to uniform resolution: "[f]or purposes of class certification, the UCL, FAL, and CLRA are materially indistinguishable." *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014) (holding that "[e]ach statute allows Plaintiffs to establish the required elements of reliance, causation, and damages by proving that Defendants made what a reasonable person would consider a material misrepresentation.")  Indeed, the determinations necessary to adjudicate the CLRA, FAL, and UCL are not made with regard to each class member, but under a single, objective, and common "reasonable consumer" standard. *See Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) ("Importantly, California consumer protection laws take an objective approach of the ***reasonable*** consumer, not the particular consumer.")  The "objective test renders claims under the UCL, FAL and CLRA ideal for class certification because they will not require the court to investigate class members' individual interaction with the product." *Tait*, 289 F.R.D. at 480.  For these reasons, "whether or not Defendant[]'s claims [on the Products] are misleading is an objective, classwide inquiry for the purposes of the UCL, FAL and the CLRA." *Forcellati*, 2014 WL 1410264, at *9.

While Plaintiff is not required to delve into the merits of her claims at this stage, she has demonstrated that consumer deception and materiality can be proven on a common basis. Dr. Dennis' conclusion that 75.2% of consumers are deceived by the "Complete" representation serves as common proof of deception.  Dennis Report at ¶ 73; *see also Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 613 (N.D. Cal. 2018) ("the standard requires only that the Court find there is a probability that reasonable consumers could be misled, not that they all believed 'Made From

-13-

Real Ginger' means the same thing.") (emphasis added).  Moreover, Dr. Dennis found that 93.8% of consumers preferred to purchase a children's multivitamin product that has all 13 essential vitamins.  Dennis Report at ¶ 75; *see also In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1019 (C.D. Cal. 2015) ("Plaintiffs need not prove at this stage that every ConAgra customer would find the '100% Natural' claim material or would believe that it meant the products contained no GMOs").  Therefore, predominance is satisfied for Plaintiff's UCL, FAL, and CLRA claims.

d.   Common Questions Predominate With Respect to Plaintiff's Express/Implied Warranty Claims

Similarly, common questions predominate for Plaintiff's express and implied warranty claims. "Determinations of whether Defendant misrepresented its products and, as a result, whether warranties were breached, are common issues appropriate for class treatment."  *Astiana v. Kashi Co.*, 291 F.R.D. 493, 505 (S.D. Cal. 2013) (certifying express warranty claim based on "Nothing Artificial" label, holding that the claim is "based on common contentions of deceptive conduct by Defendant in marketing its products" and subject to common proof); *Allen v. Hyland's Inc*., 300 F.R.D. 643, 669 (C.D.Cal.2014) (certifying express warranty claim because "each of the elements is subject to common proof."); *In re ConAgra*, 90 F. Supp. 3d at 985 (same).  Similarly, "[b]ecause an implied warranty claim requires an objective standard…courts routinely certify implied warranty classes…'"; *Tait*, 289 F.R.D. at 485; *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 537 (C.D. Cal. 2012) (certifying implied warranty claim).  Here, whether Bayer breached its warranty that the Products are "Complete" multivitamins (which was on both Products during the entire Class Periods) is a common issue.

e.   Common Questions Predominate With Respect To Plaintiff's Common Law Fraud Claim

As with Plaintiff's California consumer claims, common questions predominate over Plaintiff's common law fraud claim. The Ninth Circuit has long

-14-

held that the predominance requirement is met when a common law fraud claim is based on a common course of conduct. *In re First All. Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006) ("[T]his court has followed an approach that favors class treatment of fraud claims stemming from a 'common course of conduct.'") (quoting *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975)). As established above, Bayer has used the "Complete" representation on both Products throughout the Class Periods, a common course of conduct which has deceived a majority of consumers.

> f. Common Questions Predominate With Respect To Plaintiffs' Intentional and Negligent Misrepresentation Claims

For reasons similar to Plaintiff's consumer protection and fraud claims, common questions predominate over Plaintiff's intentional and negligent misrepresentation claims. Specifically, "both of the misrepresentation claims are subject to the same analysis that applied to the CLRA claim." *Zakaria v. Gerber Prods. Co.*, No. LACV1500200 JAK (Ex), 2016 WL 6662723, at *13-14 (C.D. Cal. Mar. 23, 2016) (further, "[b]ecause the first three elements of a claim for intentional misrepresentation, and the first element of a claim for negligent misrepresentation, refer only to Defendant's conduct, they are susceptible to common proof.") As with Plaintiff's aforementioned claims, "the California Supreme Court has held that where 'material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class.'" *Id.* at 13 (quoting *Vasquez v. Super. Ct.*, 484 P.2d 964, 973 (Cal. 1971)).

Like Plaintiff's consumer protection and fraud claims, Bayer's liability as to Plaintiff's misrepresentation claim revolves around a misrepresentation on the Product packaging uniformly made to all consumers of the Products during the Class Periods. *Schwarm v. Craighead*, 233 F.R.D. 655, 661-63 (E.D. Cal. 2006) (certifying, *inter alia*, a negligent misrepresentation claim when "defendants have engaged in standardized practices" which present a "common factual basis for all class members"

-15-

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; No. 2:17-cv-08525 JAK (JPRx)

and, therefore, "whether the defendants' conduct amounts to actionable misrepresentations predominate the action."); *see also Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2010 WL 5387831, at *5 (N.D. Cal. 2010) (certifying intentional and negligent misrepresentation claims under Rule 23(b)(3)).

### g.   Materiality and Reliance Are Subject to Common Proof

Questions of materiality and reliance do not pose a bar to certification in this action. Common proof of reliance can be established when a material misrepresentation was made to each class member. *See Wiener v. Dannon Co.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009) (holding that, for UCL, CLRA, and express warranty claims, an "inference of reliance arises as to the entire class" when "the material misrepresentations were made to all class members."); *Fitzhenry,* 326 F.R.D. at 612 ("[The UCL, FAL, and CLRA] allows plaintiffs to establish materiality and reliance (i.e., causation and injury) by showing that a reasonable person would have considered the defendant's representation material.") (quoting *In re ConAgra*, 90 F. Supp. 3d at 982–83). Moreover, "[t]he standard does not require that class members have a uniform understanding of the meaning of the challenged representation." *Fitzhenry,* 326 F.R.D. at 612 (internal quotations omitted). Further, misrepresentations need only be "sufficiently similar to justify an inference of class-wide reliance[.]" *Jt. Equity Comm. of Inv'rs of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 429-34 (C.D. Cal. 2012).

As established in Section II.C, the "Complete" representation on the Products is material to consumers, including Plaintiff. The results of Dr. Dennis' survey demonstrate that 93.8% of consumers prefer to purchase a multivitamin product that is complete – i.e., has a complete profile of vitamins. Dennis Report at ¶ 75. Further, materiality is established by Bayer's marketing studies and admissions, as demonstrated above. *See supra* Section II.C; *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("A representation is 'material' . . . if 'the maker of the representation knows or has reason to know that its recipient regards or is likely

-16-

to regard the matter as important in determining his choice in action.'"); *see also Broomfield*, 2018 WL 4952519, at *11 (finding that Dr. Dennis's materiality survey results, in combination with defendant's internal documents and plaintiffs' damages expert report, were sufficient to raise the common question of whether the misrepresentations were material).  Because materiality can be proven on a class-wide basis, reliance is also subject to common proof.

In any event, because materiality is judged on the objective, reasonable consumer standard, its determination is not only subject to common proof, but better suited for resolution at a later stage.  *Johns v. Bayer Corp.*, 280 F.R.D. 551, 558-59 (S.D. Cal. 2012) (holding that "California's consumer protection laws evaluate materiality under a reasonable person standard, not an individualized basis" and that materiality "is a question of fact to be determined at a later stage."); *Broomfield*, 2018 WL 4952519 at *11 ("the question at this stage is not whether Plaintiffs have successfully proven materiality, but rather whether the materiality inquiry is a common question susceptible to common proof that helps to establish predominance.")  Therefore, materiality and reliance pose no hindrance to certification of the Classes.

h.  <u>Class-Wide Relief Can Be Proven On A Common Basis</u>

In *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013), the Supreme Court held that in order to meet the predominance prong for class certification, a plaintiff must establish that "damages are capable of measurement on a classwide basis" and that "[c]alculations need not be exact, but at the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability case. . . .'" (citation omitted). Thus, to satisfy Rule 23(b)(3)'s predominance requirement, plaintiffs need only present a "method of calculating damages" that "is consistent with their theory of liability."  *See Forrand v. Fed. Exp. Corp.*, No. CV 08-1360 DSF (PJWx), 2013 WL 1793951, at *3 (C.D. Cal. Apr. 25, 2013) (emphasis added); *Chavez*, 268 F.R.D. at 379 ("At class certification, plaintiff must present a likely

-17-

method for determining class damages, though it is not necessary to show that his method will work with certainty at this time.") (internal quotation marks omitted). Moreover, the Ninth Circuit has reaffirmed the long-standing rule that individual damage calculations alone cannot defeat class certification.  *See Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016).

Plaintiff's theory of liability and damages is that consumers paid excess money, i.e., a price premium, for the Products under the mistaken belief that the Products contained a complete profile of vitamins. In the Ninth Circuit, a price premium is the proper of method of restitution to class members in a consumer class action like this one.  *See Brazil v. Dole Packaged Foods, LLC*, No. 12-cv-01831-LHK, 2014 WL 5794873, at *5 (N.D. Cal. Nov. 6, 2014) ("The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received.")  In fact, the Ninth Circuit has recently affirmed a district court's certification of a consumer-fraud class action which "proposed to measure" damages through a "classwide price premium attributable" to the products' labeling. *Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654, 657 (9th Cir. 2017).

Here, as outlined in Section II.D, Plaintiff proposes a damages model tied to her theory of liability. Plaintiff's damages model involves a two-pronged approach. *First*, Dr. Dennis' consumer perception survey establishes that consumers believe, based on "Complete" representation, that the Products contain all of the essential vitamins, and further, that this belief is material to their purchasing decisions. Having established consumer misperception, Dr. Dennis implemented an advanced survey and statistical technique known as CBC, a widely accepted methodology both in market research and class action litigation, to calculate a price premium associated solely with the "Complete" representation.  *See, e.g.*, *In re: Lenovo Adware Litig.*, No. 15-MD-02624-RMW, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016) (approving of conjoint-based price premium model); *Guido v. L'Oreal, USA, Inc.*, No.

2:11-CV-01067-CAS, 2014 WL 6603730, at *8 (C.D. Cal. July 24, 2014) (same); *see also* Dennis Report at ¶ 51 (citing cases).  The results of Dr. Dennis' CBC analysis demonstrate that the misperception that Products contain all the essential vitamins enabled Bayer to command price premiums of 22.99% and 4.85% depending on the Products' size.  *See id.* at ¶ 92.

Recent courts have approved Dr. Dennis' past use of CBC under nearly identical consumer false advertising class actions.  *See, e.g.*, *Fitzhenry,* 326 F.R.D. at 606 (declining to strike Dr. Dennis' CBC analysis to determine price premium associated with phrase "Made From Real Ginger" on the product label); *Allen v. Conagra Foods, Inc*., 331 F.R.D. 641, 671-74 (N.D. Cal. 2019) (finding that Dr. Dennis' conjoint analysis is tied to plaintiffs' theory that the products commanded a price premium solely attributable to the challenged claims and therefore shows that damages are calculable on a classwide basis); *Martinelli v. Johnson & Johnson*, No. 2:15-CV-01733-MCE-DB, 2019 WL 1429653, at *4 (E.D. Cal. Mar. 29, 2019) (denying motion to strike Dr. Dennis' conjoint analysis conducted to find the price premium associated with challenged label claims).

*Second*, although at class certification a plaintiff must only provide a ***method*** for calculating damages on a class-wide basis (*see Leyva v. Medline Industries, Inc*., 716 F.3d 510, 514 (9th Cir. 2013)). Plaintiff has proffered both a method for calculating damages and actually preliminarily performed these calculations.[8] Specifically, Dr. Caves measured aggregate class-wide damages by multiplying the price premiums calculated by Dr. Dennis by the dollar sales of the Products during the period November 22, 2013 to June 30, 2019.  Caves Report, at ¶ 24.

In sum, Plaintiff has satisfied *Comcast* because she has proffered a scientifically and legally accepted method for ascertaining damages on a class-wide basis that comports with her theory of liability.

---

[8] If this case was to proceed to trial, Dr. Caves will need to update his damages calculations based on updated sales figures for the time period after he submitted his expert reports.

i.   <u>Common Questions Predominate With Respect To
Plaintiff's Quasi Contract/Unjust Enrichment/Restitution
Claims</u>

Plaintiff's claim for restitution is subject to common proof for the reasons
outlined in Section III.A.2.h, which demonstrate that Plaintiff's economic damages
model may be easily applied to provide class-wife relief. Further, "[c]ommon issues
also exist and predominate on Plaintiffs' claims for quasi-contract ... as to the
products labeled [with the "Complete" misrepresentation]" because these "claims are
based on common contentions of deceptive conduct by Defendant in marketing its
products." *Astiana*, 291 F.R.D. at 505 (certifying class on behalf of a quasi-contract
claim because they "require common proof of the defendant's conduct and raise the
same legal issues for all class members.")  For the same reason, Plaintiff's claims for
unjust enrichment warrant certification.  *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D.
558, 568 (S.D. Cal. 2012) (certifying a class for unjust enrichment because "unjust
enrichment claims are appropriate for class certification as they require common proof
of the defendant's conduct and raise the same legal issues for class members.")

j.   <u>Rule 23(b)(3) - A Class Action is Superior To Other
Methods Of Adjudication</u>

Rule 23(b)(3) provides four factors in addressing the superiority of a class
action: "(A) the class members' interests in individually controlling the prosecution
or defense of separate actions; (B) the extent and nature of any litigation concerning
the controversy already commenced by or against members of the class; (C) the
desirability or undesirability of concentrating the litigation of the claims in the
particular forum; and (D) the likely difficulties in managing a class action."  Fed. R.
Civ. P. 23(b)(3).  Here, all four factors support class certification.

First, the relatively low price of the Products[9] does not provide the financial incentive necessary for individual consumers to pursue this action. *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 628 (C.D. Cal. 2008) (finding that "the individual class members do not have a strong interest in controlling the litigation" when "the potential damages for each class member are approximately $4,000[.]")  Second, "it does not appear that any members of the class have commenced any other litigation concerning the controversy alleged herein." *Menagerie Prods. v. Citysearch*, No. CV 08-4263 CAS (FMO), 2009 WL 3770668, at *19 (C.D. Cal. Nov. 9, 2009). Third, "[c]lass action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'" *Ballard v. Equifax Check Servs. Inc*, 186 F.R.D. 589, 600 (E. D. Cal. 1999).  Finally, adjudicating all of Plaintiff's and the Class' claims efficiently in a unified mechanism falls within the policy favoring class actions. *Wiener*, 255 F.R.D. at 672 ("[P]ermitting the potential class members, who individually would be unable to vindicate their rights, to collectively assert their causes of action is consistent with the primary purpose of a Rule 23(b)(3) class action.")  For these reasons, a class action is far superior to pursuing the Class members' claims individually.

### 3.   <u>Rule 23(a)(3) - Typicality</u>

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3).  In the Ninth Circuit, typicality is satisfied if "the unnamed class members have injuries similar to those of the named plaintiffs and the injuries result from the same, injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001), *abrogated on other grounds by Johnson v. Cal.*, 543 U.S. 499 (2005).  However, "[t]ypicality does not mean that the claims of the class representatives must be identical or substantially identical to those of absent class members." *Staton v. Boeing Co.*, 327

---

[9] *See, e.g.*, Dennis Report at ¶ 88 (███████████████████████████████ ███████████).

F.3d 938, 957 (9th Cir. 2003). Rather, they only need to be "reasonably co-extensive with those of absent class members[.]" *Hanlon*, 150 F.3d at 1020.

Courts find typicality met in cases where defendants utilize "sufficiently similar" labeling claims or omissions. *See, e.g.*, *Beck-Ellman*, 283 F.R.D. at 566 (certifying claims on behalf of all models in "heating pad" product line where all "heating pads contain similar omission[s]" and were "sufficiently similar"). This is because "the typicality inquiry . . . turns on Plaintiffs' legal theory, not the 'specific facts from which it arose.'" *Forcellati*, 2014 WL 1410264, at *10. Here, the "Complete" claim was on all Products during the Class Periods. For this reason, Plaintiff may represent all members of the Classes, regardless of which Product they purchased and when. *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. Mar. 28, 2010) ("The typicality requirement does not mandate that the products purchased . . . must be the same as those of absent class members.")

And as discussed in Section II.B-D, the deception, materiality, and harm pertaining to Class members parallels those of the Plaintiff. Plaintiff purchased both Products during the Class Periods. In purchasing the Products, Plaintiff believed that the Products would contain a complete profile of vitamins. Woods Dep. Tr. at 72:25 – 73:3. Moreover, the purported fact that the Product was "Complete" was an important factor she considered in deciding to purchase the Products. *Id*. at 132:20-22; *see Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 479 (C.D. Cal. 2012) (finding typicality when "each named plaintiff testified that she would not have purchased Serum or would have paid less for Serum had she known it had flammable characteristics.") Therefore, Plaintiff shares an injury with the Classes that "is not unique to" her and which occurred out of the same "course of [deceptive] conduct[.]" *Ellis*, 657 F.3d at 984 (internal quotation marks omitted). Thus, the typicality requirement is satisfied.

### 4.  <u>Rule 23(a)(4) - Adequacy</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is a two-part test: "(1) [D]o the [representative] plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the [representative] plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Here, both criteria are met.

First, the interests of Plaintiff and Class members are aligned and there are no conflicts of interest. As discussed above, Plaintiff purchased the Products, reasonably believing that, based on the "Complete" representation, the Products contain a full profile of the vitamins. *See* Woods Dep. Tr. at 72:25 – 73:3. Her individual and class claims arise from the same course of deceptive conduct and Plaintiff seeks remedies equally applicable and beneficial to the Classes. Second, Plaintiff has played an active role in this litigation. Plaintiff has sat for two depositions, has responded to multiple sets of discovery requests, and has prepared and produced numerous documents. Moreover, Plaintiff has been in close and continuous contact with the undersigned counsel, including meeting with her attorneys three times and engaging in over five phone calls prior to her first deposition. *See* Woods Dep. Tr. at 30:5-31:2. Further, Plaintiff understands her duties as a class representative and who she represents. *Id.* at 36:16-37:8; 217:10-17.

Plaintiff's counsel is equally committed to pursuing this action on behalf of the Class. When determining whether Class Counsel is adequate, "a court may examine the attorneys' professional qualifications, skill, experience, and resources." *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (citation omitted). Plaintiff's counsel, Faruqi & Faruqi, LLP and The Wand Law Firm, P.C. are well-respected firms with extensive experience in complex and class action litigation. *See* Heikali Decl., at ¶¶ 5-8, Ex. N (Firm Resume of Faruqi & Faruqi, LLP); Declaration

1   of Aubry Wand, ¶¶ 11-14. Class Counsel also maintain the resources necessary to

2   vigorously litigate this action.  Heikali Decl., ¶ 9.

3              **5.    <u>Rule 23(b)(2) Injunctive Relief</u>**

4        Finally, Plaintiff also requests the Court certify the Regular Gummies Class

5   under Rule 23(b)(2).[10] Rule 23(b)(2) permits the court to certify a class where the

6   party against whom the relief is sought "has acted or refused to act on grounds that

7   apply generally to the class, so that final injunctive relief . . . is appropriate respecting

8   the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2).  The burden under this standard is

9   low.  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) ("It is sufficient if class

10  members complain of a pattern or practice that is generally applicable to the class as

11  a whole. Even if some class members have not been injured by the challenged

12  practice. . . ."). "Although common issues must predominate for class certification

13  under Rule 23(b)(3), no such requirement exists under 23(b)(2)." *Id*.  As discussed

14  above, Bayer continues to market and sell the Regular Gummies Products with the

15  same "Complete" representation, warranting injunctive relief.

16       Plaintiff has standing to pursue injunctive relief because she would likely

17  purchase the Regular Gummies Products again in the future if she knew with

18  confidence whether they were complete or not.  FAC at ¶ 11.  However, Plaintiff

19  cannot currently rely with confidence on Bayer's representation regarding whether

20  the Regular Gummies Products is complete or not, and whether they will be in the

21  future.  Woods Depo. Trans. at 156:17-157:5; *see also Davidson v. Kimberly-Clark*

22  *Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018) (finding that "previously deceived

23  consumer[s]" may be under a "threat of future harm" when they are unable to rely on

24  a product's labeling in the future and do not purchase the products as a result, despite

25  desiring to do so); *Claiborne v. Church & Dwight Co., Inc.*, No. 3:17-cv-00746-L-

26  JLB, 2017 WL5256752, at *3 (S.D. Cal. Nov. 13, 2017) (explaining that false

27  _____

28  [10] As discussed *supra*, because the "Complete" representation was removed from the Sour Gummies Product in 2018, Plaintiff does not seek to certify the Sour Gummies Class under Rule 23(b)(2).

advertising leads to consumers "suffer[ing] continuing injury in the form of a lessened ability to trust that any similar future representation is accurate" and therefore "has a tendency to suspect a continuing misrepresentation.")  Therefore, Plaintiff, like in *Claiborne* and *Davidson*, has "standing to pursue an injunction prohibiting continued false advertising because such relief could restore [her] trust, thus aiding [her] in making informed purchasing decisions in the future." *Id*.  Accordingly, Rule 23(b)(2) is satisfied with respect to the Regular Gummies Class.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court certify the proposed Classes, designate Plaintiff as Class representative, and appoint Faruqi & Faruqi, LLP and the Wand Law Firm, P.C. as Class counsel. In the alternative, and only to the extent the Court believes Plaintiff has not satisfied any of the elements for class certification, Plaintiff respectfully requests that the Court afford her leave to file a renewed motion for class certification.

DATED: February 24, 2020         Respectfully submitted,


**FARUQI & FARUQUI, LLP**


By: */s/ Benjamin Heikali*
    Benjamin Heikali
    Joshua Nassir

**THE WAND LAW FIRM, P.C.**
Aubry Wand

*Attorneys for Plaintiff and the Putative Classes*