UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-08525 JAK (JPRx) | Date | February 23, 2024 |
| Title | Camila Cabrera v. Bayer Healthcare LLC, et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Patricia Kim | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE MOTION FOR CLASS CERTIFICATION (DKTS. 114 (SEALED), 115 (REDACTED))**

## I. <u>Introduction</u>

On November 22, 2017, Camille Cabrera ("Cabrera") brought this putative class action against Bayer HealthCare LLC ("Bayer Health") and Bayer Corporation ("Bayer Corp.") (collectively, "Defendants"). Dkt. 1. The Complaint advances the following causes of action:

1. Violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*;
2. Violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*;
3. Violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*;
4. Breach of express warranty;
5. Breach of implied warranty;
6. Common law fraud;
7. Intentional misrepresentation;
8. Negligent misrepresentation; and
9. Quasi-contract/unjust enrichment/restitution.

*Id.* ¶¶ 45-122.

On January 26, 2018, Defendants filed a motion to dismiss (the "MTD"). Dkt. 26. On March 6, 2019, the MTD was denied. Dkt. 60. On September 11, 2019, Plaintiff filed a First Amended Complaint (the "FAC"), which is the operative one. Dkt. 76. The FAC substitutes Sonnetta Woods ("Woods" or "Plaintiff") as the named plaintiff. Dkts. 75, 76.

On February 24, 2020, Plaintiff filed a motion for class certification (the "Motion"). Dkt. 114. On March 25, 2020, Defendants filed an opposition to the Motion (the "Opposition"). Dkt. 126. On April 6, 2020, Plaintiff filed a reply in support of the Motion (the "Reply"). Dkt. 133.[1] Upon the completion of briefing, the Motion was taken under submission without a hearing pursuant to the Continuity of Operations

[1] The parties have filed both sealed and unsealed versions of the Motion, Opposition and Reply. All citations in this Order are to the sealed version of each document.

("COOP") Plan for the Central District of California. *See* Dkt. 125; Order of the Chief Judge 20-042.[2,3]

For the reasons stated in this Order, the Motion is **DENIED**.

## II. Factual Background

### A. The Parties

It is alleged that Bayer Corp. is an Indiana corporation whose principal place of business is in Whippany, New Jersey. Dkt. 76 ¶ 12. It is alleged that Bayer Health is a Delaware corporation whose principal place of business is also in Whippany, New Jersey. *Id.* ¶ 13. It is alleged that Defendants formulate, manufacture, label, market, distribute and sell nationwide two multivitamin products designed for children. They are the Flintstones Gummies Complete Children's Multivitamin Supplement ("Multivitamin Supplement") and the Flintstones Sour Gummies Complete Children's Multivitamin Supplement ("Sour Multivitamin Supplement") (collectively, the "Products"). *Id.* ¶¶ 1, 11, 19.

It is alleged that Plaintiff is a citizen of California who resides in Los Angeles County. *Id.* ¶ 11. It is alleged that, on or around January 2019, Plaintiff purchased the Multivitamin Supplement at a Walmart store in Hawthorne, California. *Id.*

### B. Allegations in the FAC

It is alleged that the Products are sold both online, including through Amazon, and in retail stores and pharmacies, including Target, Walgreens, CVS and Walmart. *Id.* ¶ 19. It is alleged that each of the Products is marketed as a "complete" children's multivitamin supplement. *Id.* ¶ 20. According to the U.S. Food and Drug Administration ("FDA"), "[v]itamins are essential nutrients that contribute to a healthy life" and "[t]here are 13 vitamins that the body absolutely needs: vitamins A, C, D, E, K, and the B vitamins (thiamine, riboflavin, niacin, pantothenic acid, biotin, vitamin B-6, vitamin B-12 and folate)." *Id.* ¶ 14 (quoting *Fortify Your Knowledge About Vitamins*, FDA (Feb. 2009)),

---

[2] On April 10, 2020, Defendants also filed a request for leave to file a sur-reply, which was attached to the filing (the "Sur-Reply"). Dkt. 137. Based on a review of Defendant's request, sufficient good cause has been shown for the requested relief, and the request is **GRANTED**. The Sur-Reply is considered in connection with this Order.

[3] The parties have also filed six Notices of Supplemental Authority. On March 18, 2021, Plaintiff filed a Notice of Supplemental Authority regarding *McMorrow v. Mondelez International, Inc.*, No. 17-CV-2327-BAS, 2021 WL 859137 (S.D. Cal. Mar. 8, 2021). Dkt. 195. On March 31, 2022, Plaintiff filed a Notice of Supplemental Authority regarding *MacDougall v. Am. Honda Motor Co.*, No. 20-56060, 2021 WL 6101256 (9th Cir. Dec. 21, 2021). Dkt. 199. On April 18, 2022, Plaintiff filed a Notice of Supplemental Authority regarding *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, No. 19-56514, 2022 WL 1053459 (9th Cir. Apr. 8, 2022). Dkt. 201. On June 20, 2022, Plaintiff filed a Notice of Supplemental Authority regarding *Montera v. Premier Nutrition Corp.*, No. 16-CV-06980-RS, 2022 WL 1225031 (N.D. Cal. Apr. 26, 2022). Dkt. 203. On September 22, 2022, Defendants filed a Notice of Supplemental Authority regarding *In re KIND LLC "Healthy and All Natural" Litig.*, No. 15-MD-2645, 2022 WL 4125065 (S.D.N.Y. Sept. 9, 2022). Dkt. 209. On June 16, 2023, Defendants filed a Notice of Supplemental Authority regarding *McGinty v. Procter & Gamble Co.*, No. 22-15080, 2023 WL 3911531 (9th Cir. June 9, 2023). Dkt. 220.

.

https://www.fda.gov/ForConsumers/ConsumerUpdates/ucm118079.htm). It is alleged that the description of the Products as "complete" multivitamins is inaccurate and a misrepresentation because the Products lack four of the essential vitamins: Vitamin K, Vitamin B1 (thiamine), Vitamin B2 (riboflavin) and Vitamin B3 (niacin) (collectively, the "Missing Vitamins"). *Id.* ¶ 3. It is alleged that the Missing Vitamins contribute to several important functions, including blood clotting, bone health, energy metabolism and production and digestion. *Id.* ¶¶ 15-18.

The FAC provides the following images of the allegedly inaccurate labeling on the Products:







*Id.* ¶ 20.

It is alleged that, on or around January 2019, Plaintiff purchased a Multivitamin Supplement at a Walmart retail store in Hawthorne, California. *Id.* ¶ 11. It is alleged that Plaintiff, reasonably relying on the statement on the product label that it was a "complete" multivitamin supplement, believed that the Multivitamin Supplement contained "all the vitamins." *Id.* It is alleged that Plaintiff would not have purchased the Multivitamin Supplement, or would have paid significantly less for it, had she known that it did not contain all of the vitamins. *Id.* It is further alleged that Plaintiff seeks to continue purchasing the Products and is likely to do so, but only if they contain all of the vitamins. *Id.* It is alleged that,

"absent an injunction, [Plaintiff] will be unable to rely with confidence on Defendants' representations" and will not purchase the Products, even though she would like to. *Id.*

C. Class Allegations

Plaintiff seeks to represent the following three classes pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3):

- The "Nationwide Class": All persons in the United States who, within the relevant statute of limitations period, purchased any of the Products bearing the "complete" representation.
- The "California Subclass": All California residents who, within the relevant statute of limitations period, purchased any of the Products bearing the "complete" representation.
- The "California Consumer Subclass": All California residents who, within the relevant statute of limitations period, purchased any of the Products bearing the "complete" representation for personal, family or household purposes.

*Id.* ¶¶ 32-34. Excluded from the three classes are "persons or entities that purchased the Products for sole purposes of resale." *Id.* ¶ 35.

The FAC alleges that class certification is appropriate under Fed. R. Civ. P. 23(b)(2) and 23(b)(3) because the classes are sufficiently numerous, common questions predominate, Plaintiff's claims are typical of the claims of the members of the proposed classes, Plaintiff is an adequate representative of the members of the classes and a class action would be superior to other available means of adjudication. *Id.* ¶¶ 38-44.

## III. <u>Analysis</u>

A. Legal Standards

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks omitted). Under Fed. R. Civ. P. 23, a class may "be certified only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' " *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). That "rigorous analysis" will "frequently" include "some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351 (internal citation omitted). "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160*; see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) ("Although we have cautioned that a court's class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiffs underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." (internal quotation marks and citations omitted)); Fed. R. Civ. P. 23(c)(1) advisory committee's note to 2003 amendment, 28 U.S.C. App., p.144 ("[A]n evaluation of the probable

outcome on the merits is not properly part of the certification decision.").

The first step in establishing the propriety of class certification is whether there is a showing that the proposed class meets each of the prerequisites of Rule 23(a). *Wal-Mart*, 564 U.S. at 349; *Hanon*, 976 F.2d at 508. These are: (i) numerosity; (ii) commonality; (iii) typicality and (iv) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)-(4). Further, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350 (emphasis in original).

If these four requirements are met, the next issue is whether the proposed class meets the standards of the applicable portion of Rule 23(b). *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Plaintiff seeks certification under Rule 23(b)(2) and 23(b)(3). Rule 23(b)(3) provides that certification may be warranted where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Fed. R. Civ. P. 23(b)(3) applies when "class-action treatment is not as clearly called for as [(b)(1) and (b)(2)], but it may nevertheless be convenient and desirable depending upon the particular facts." Fed. R. Civ. P. 23(b)(3) advisory committee note to 1966 amendment. It "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.*

"Rule 23(b)(2), on the other hand, requires only that 'the party opposing the class ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.' " *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 928 (9th Cir. 2019) (quoting Fed. R. Civ. P. 23(b)(2)); *id.* at 937-38 (rejecting the district court's application of a "cohesiveness" requirement under Rule 23(b)(2)). "The key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted — the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.' " *Wal-Mart*, 564 U.S. at 360 (quoting Richard A. Nagreada, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction." *Id.* (emphasis omitted).

B. Application

1. Fed. R. Civ. P. 23(b)(a) Requirements

a) Numerosity

(1) <u>Legal Standards</u>

Fed. R. Civ. P. 23(a)(1) requires that, to be certified, a class must be "so numerous that joinder of all members is impracticable." "Impracticability does not mean impossibility, but only the difficulty or

inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (internal quotations and citation omitted). No specific number of members is needed to satisfy this requirement. *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967). "However, numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (internal quotations and citations omitted).

(2) <u>Application</u>

Plaintiff contends that numerosity is satisfied because Defendants' sales of the Products have generated millions of dollars in revenue during the class periods. Dkt. 114 at 18; Dkt. 114-13 ¶ 24. Although there is no specific evidence as to how many individuals have purchased the Products at issue, it is reasonable to conclude based on the foregoing information that there are at least hundreds of prospective class members. *See, e.g.*, *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010) ("Although the parties have not identified the number of possible class members, the court infers from the allegation that Blue Sky sold over $20 million of product, or over 500,000 cases per year, that there are numerous purchasers who are potential class members so as to satisfy the numerosity requirement."). Defendants do not dispute that this is a sufficient basis for numerosity. *See generally* Dkt. 126.

For these reasons, the numerosity requirement is satisfied.

b) Adequacy and Typicality

(1) <u>Legal Standards</u>

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). As noted, class counsel is adequate where their representation is not limited by conflicts, and where they would vigorously prosecute the action on behalf of the class. Further, some courts have examined the qualifications and competence of counsel. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020;

*see also Castillo v. Bank of Am., N.A.*, 980 F.3d 723, 729 (9th Cir. 2020). Typicality may not be shown "where a putative class representative is subject to unique defenses which threaten to become the focus on the litigation." *Hanon*, 976 F.2d at 508 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

(2) Application

Plaintiff contends that she is an adequate class representative with typical claims because she "shares an injury with the [c]lasses that 'is not unique to' her and which occurred out of the same 'course of [deceptive] conduct[.]' " Dkt. 114 at 19 (quoting *Ellis*, 657 F.3d at 970). In response, Defendants argue Plaintiff is neither adequate nor typical because "she presents Bayer with 'defenses unique to [her]' " that would become the focus of litigation if the putative classes were certified. Dkt. 126 at 8 (quoting *Hanon*, 976 F.2d at 508). These arguments are considered in this sequence.

*First*, Defendants contend that they can defend by arguing that Plaintiff did not rely on the purported misrepresentations that appear on the Products before purchasing them. *Id.* The FAC alleges that, in first purchasing the Multivitamin Supplement, Plaintiff had selected it by "reasonably relying on the Defendants' 'Complete' representation on the Product and believing that the product contained all the vitamins." Dkt. 76 ¶ 11. However, at her deposition, Plaintiff testified that, prior to clicking on a Facebook page of Plaintiff's counsel, and then answering a corresponding questionnaire, she had never thought about the meaning of the "complete" as used on the Products. Dkt. 127-18 at 263:14-264:2. This testimony provides Defendants with a plausible merits defense that Plaintiff was not misled or injured by Defendants' description of the Products as "complete," because Plaintiff did not consider or rely on that representation when she purchased the Products. Dkt. 126 at 16.

Further, Plaintiff testified that since becoming a named plaintiff, she has repeatedly purchased "Equate" brand multivitamins, another brand of multivitamin whose label states "Compare to Flintstones Complete Gummies." Dkt. 127-18 at 287:6-25, 290:5-24, 301:11-21, 304:24-306:20-22, 311:21-25. Plaintiff testified that she was aware that "Equate" multivitamins, like the Products, lack the essential vitamins K, B1, B2 and B3. *Id.* Plaintiff further testified that she decided to purchase the "Equate" multivitamins because her principal concern was that her daughter have "some vitamins," and was not concerned with providing "all vitamins," or all essential vitamins, to her daughter. *Id.* at 290:10-24, 311:21-25. This testimony supports the position that Plaintiff has continued to purchase similar products that do not have all essential vitamins and does not place significant weight on whether a product provides a "complete" range of vitamins. This testimony will provide another basis on which Defendants could argue that Plaintiff has not been injured as alleged in the FAC.

*Second*, Defendants contend that they can defend the claims advanced by Plaintiff on the ground that she did not have a sufficient understanding of the term "complete" on the label of the Products. During her deposition, Plaintiff testified that, when purchasing the Multivitamin Supplement, she had little or no expectation as to what vitamins it should contain. Dkt. 127-4 at 178:3-181:18. She reaffirmed that, to her, "complete" means that a multivitamin "has all the multivitamins that it should have," and not necessarily all essential vitamins. *Id.* at 73:2-3, 186:4-23; Dkt. 127-18 at 264:21-265:11, 267:12-268:25. This testimony may be presented to dispute the allegation in the FAC that Plaintiff reasonably relied on the word "complete" as stating or implying that the Products contained "all the vitamins." Dkt. 76 ¶ 5.

Plaintiff's deposition testimony is sufficient to show that she is "so uniquely vulnerable" to specific defenses that "it is predictable that this litigation will focus on arguments and facts unique to [her]." *Backus v. ConAgra Foods, Inc.*, No. 16-cv-00454, 2016 WL 7406505, at *5 (N.D. Cal. Dec. 22, 2016); *see also Hanon*, 976 F.2d at 508-09. Therefore, because the defenses described are central to Defendants' planned response to Plaintiff's individual claims, if class certification were granted with Plaintiff as the class representative, class counsel "will have to devote most of their time and resources" to Plaintiff's individual claims as opposed to the advancement of class members' claims. *Nghiem v. Dick's Sporting Goods, Inc.*, 318 F.R.D 375, 383 (C.D. Cal. 2016). For this reason, Plaintiff is not a typical member of the putative classes. Further, Plaintiff's knowledge and priorities at the time of her purchases make her an inadequate representative of the members of the putative classes because it increases the risk that this litigation will focus on such knowledge and priorities.

For these reasons, Plaintiff is an inadequate and atypical class representative. Therefore, the Motion is **DENIED** on this basis. To advance party and judicial efficiency and in recognition that a request could be made to offer an alternative named plaintiff, the Order examines the other Fed. R. Civ. P. 23 factors.

2. Fed. R. Civ. P. 23(b)(3) Requirements

a) Commonality & Predominance

(1) Legal Standards

Fed. R. Civ. P. 23(a)(2) provides that a class may be certified only if "there are questions of law or fact common to the class." Commonality requires a showing that "the class members have suffered the same injury" and "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 350-51 (internal quotation marks omitted). The class claims must "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* For the purposes of commonality, " 'even a single common question' will do." *Id.* at 359 (internal quotation marks and citations omitted). In general, the commonality element is satisfied where the action challenges "a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005).

Fed. R. Civ. P. 23(b)(3) requires a greater degree of commonality than the one that applies under Rule 23(a). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance analysis assumes that the Rule 23(a)(2) commonality requirement has already been established, *see Hanlon*, 150 F.3d at 1022, and "focuses on whether the 'common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' " *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (quoting *Hanlon*, 150 F.3d at 1022). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation marks omitted). Where the issues of a case "require the separate

adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001).

"Predominance is not . . . a matter of nose-counting. Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (internal citations omitted). "Therefore, even if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.' " *In re Hyundai*, 926 F.3d at 557 (quoting *Tyson Foods, Inc.,* 577 U.S. at 454-55).

(2) <u>Application</u>

(a) UCL, FAL and CLRA Claims

The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. A plaintiff bringing a UCL claim must show that he or she "suffered 'as a result of' the defendant's conduct." *Walker v. Life Ins. Co. of the S.W.*, 953 F.3d 624, 630 (9th Cir. 2020) (citing Cal. Bus. & Prof. Code § 17204). At the class certification stage, named plaintiffs must prove "actual reliance" on the alleged misrepresentation. *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-28 (2009). However, as to absent class members, "relief under the UCL is available without individualized proof of deception, reliance and injury," *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (quoting *In re Tobacco II Cases*, 46 Cal. 4th at 320), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)), unless the claims of the class members are not common because they were exposed to different alleged misrepresentations by the defendant. *Walker*, 953 F.3d at 631. On the merits, a class action plaintiff bringing a UCL claim must also meet a "reasonable consumer" test that focuses on the defendant's conduct, and as to which " 'it is necessary only to show that members of the public are likely to be deceived.' " *Id.* (quoting *In re Tobacco II Cases*, 46 Cal. 4th at 312). The same standard applies to FAL claims. *In re Tobacco II Cases*, 46 Cal. 4th at 312.

The standard for CLRA claims is different than that for FAL and UCL claims because "the CLRA requires each class member to have an actual injury caused by the unlawful practice." *Stearns*, 655 F.3d at 1022 (citing *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 155-56 (2010)). However, " '[c]ausation, on a classwide basis, may be established by materiality. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class.' " *Id.* (quoting *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009)). "[A] misrepresentation . . . is material 'if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.' " *Id.* (quoting *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010), as modified on denial of reh'g (Feb. 8, 2010)).

The putative classes are defined in a way that all putative class members purchased Products with the term "complete" on the labels. *See Cabral v. Supple LLC*, 608 F. App'x 482, 483 (9th Cir. 2015) ("It is critical that the misrepresentation in question be made to all of the class members."). Each of the

Products incorporates the term "complete" on the front of the wraparound label in large, all-capitalized text. The term "complete" appears in the third-largest font size on the front label, with the largest font size used for the "Flintstones" trademark and the second-largest font size used for the product name. *See* Dkt. 114 at 9 (images of the Products). Therefore, it is reasonable to assume that putative class members were exposed to the same "complete" term when deciding to purchase the Products. *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 895-96 (N.D. Cal. 2015) (it is appropriate to assume initially that class members have been exposed to misrepresentations on product labels); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 667 (C.D. Cal. 2014) (same).

Because the class members were all exposed to the same representations, their claims are sufficiently "cohesive," such that "relief under the UCL [and FAL] is available without individualized proof." *Stearns*, 655 F.3d at 1020; *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 568 (S.D. Cal. 2012). Further, whether these representations were material to a reasonable person is a question of fact that can be adjudicated on a classwide basis. Therefore, common questions are likely to predominate in the adjudication of Plaintiff's UCL and FAL claims. For substantially the same reasons, Plaintiff's CLRA claim meets the predominance requirement. *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1095-1103 (N.D. Cal. 2018) (concluding that a CLRA claim is treated similarly to UCL and FAL claims at the class certification stage); *In re ConAgra Foods*, 90 F. Supp. 3d 919, 982-83 (C.D. Cal. 2015) (same).

Defendants argue that common questions do not predominate because class members lack a common understanding of the term "complete" as used in connection with the Products. Dkt. 126 at 21. In support of this position, Defendants contend that the expert opinions of Dr. Michael Dennis ("Dennis") – on which Plaintiff relies to seek to show that the term "complete" would be material to, and deceive a reasonable consumer -- relies on flawed methodologies and leads to inconsistent results. Dkt. 119 at 8-9, 19-27. However, whether and why a reasonable consumer could deem the term "complete" to be material and deceptive, is an issue on the merits that is to be resolved on a more complete factual record, not in connection with a determination as to class certification. *Amgen Inc. v. Conn. Retirement Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) ("[W]e hold that such proof [of materiality] is not a prerequisite to class certification. Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class. Because materiality is judged according to an objective standard, [materiality] . . . is a question common to all members of the class . . . .") (cleaned up). Similarly, issues as to Dennis's expert testimony are ones that may be raised in the context of a *Daubert* motion that is related to a resolution of disputed facts, or whether there are any such facts.

For these reasons, the commonality and predominance requirements are satisfied as to Plaintiff's UCL, FAL and CLRA claims.

(b) Express Warranty Claim

Under California law, a plaintiff advancing an express warranty claim must show that " '(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached.' " *In re ConAgra Foods*, 90 F. Supp. 3d at 984 (quoting *Allen v. ConAgra Foods, Inc.*, No. 13-CV-01279-JST, 2013 WL 4737421, at *11 (N.D. Cal. Sept. 3, 2013)). Proof of individual reliance on a warranty is not required. *Id.* (citing *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010)). "Accordingly, courts have found

that breach of express warranty claims are appropriate for class treatment where whether defendant misrepresented its product and whether such misrepresentation breached warranties are issues common to members of the putative class." *Id.* (citing *Allen*, 300 F.R.D. at 669).

In support of the express warranty claim, Plaintiff contends that the term "complete" was used to represent that the Multivitamin Supplements contained all essential vitamins and to cause a consumer to decide to purchase the Multivitamin Supplements. Dkt. 76 ¶ 78. Plaintiff also contends that Defendants breached the promise about "completeness" which was a material part of the "bargain" between the consumer and the manufacturer. Dkt. 76 ¶ 78. Because individual reliance need not be shown, the commonality and predominance requirements are satisfied as to this claim.

(c) Implied Warranty Claim

California law requires that a plaintiff asserting an implied warranty claim must be in vertical contractual privity with the defendant. *Id.* at 986 (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (2008)); *Clemens*, 534 F.3d at 1023 (for purposes of implied warranty, every plaintiff must be in an "adjoining link[] of the distribution chain" as the defendant). Therefore, a customer who buys a product from a retailer may not bring an implied warranty claim against the manufacturer. *Id.*

Given the vertical privity requirement, class adjudication of Plaintiff's implied warranty claim would require individualized inquiries as to whether each class member purchased Products directly from Defendants as opposed to from intermediaries*, e.g.*, retailers. For this reason, the predominance requirement is not satisfied as to this claim. *See id.*, 90 F. Supp. 3d at 986.

(d) Fraud, Intentional Misrepresentation and Negligent Misrepresentation Claims

Under California law,[4] common-law fraud -- or intentional misrepresentation[5] -- requires the establishment of the following elements: (i) misrepresentation; (ii) scienter; (iii) intent to induce reliance; (iv) justifiable reliance; and (v) injury. *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997); *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996); *accord In re Tobacco II Cases*, 46 Cal. 4th at 312 (citing *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332 (1998)). "The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance." *Caldo v. Owens-Ill., Inc.*, 125 Cal. App. 4th 513, 519 (2004) (citing *Small v. Fritz Cos.*, 30 Cal. 4th 167, 173 (2003)).

Because the elements of misrepresentation, scienter and intent focus on conduct by Defendants, they are amenable to classwide proof. As to reliance and injury, the Ninth Circuit has "favor[ed] class treatment of fraud claims stemming from a 'common course of conduct.' " *In re First All. Mortg. Co.*, 471

[4] Plaintiff's claims for common-law fraud, intentional and negligent misrepresentation, and quasi-contract, unjust enrichment and restitution, are brought on behalf of a nationwide putative class. Accordingly, there is a question whether California law should be applied. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-90 (9th Cir. 2012). The parties have not briefed the choice-of-law issue. Therefore, the analyses of the claims brought on behalf of the nationwide classes assume, without deciding, that California common law applies.
[5] California law treats fraud and intentional misrepresentation as asserting the same claim. *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990-91 (2004).

F.3d 977, 990 (9th Cir. 2006) (citing *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975)); *accord In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 560 (9th Cir. 2019) (citing *Hanlon*, 150 F.3d at 1022-23). As noted, California law also permits a finder of fact to infer classwide reliance where material misrepresentations have been made to the entire class. *In re Vioxx*, 180 Cal. App. 4th at 129; *accord Occidental Land, Inc. v. Superior court*, 556 P.2d 750, 754 (Cal. 1976).

As noted, the putative classes are defined in such a manner that the alleged misrepresentations were made to all class members in a uniform manner. Therefore, if the finder of fact concludes that the misrepresentations were material under a "reasonable person" standard, reliance can be found on a classwide basis. For these reasons, the commonality and predominance requirements are satisfied as to Plaintiff's fraud, intentional misrepresentation and negligent misrepresentation claims.

(e) Quasi-Contract, Unjust Enrichment and Restitution Claims

California law allows a separate unjust enrichment cause of action. *See Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 469 (9th Cir. 2017) (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*, 61 Cal. 4th 988, 1000 (2015)). Unjust enrichment claims are similar to those under quasi-contract. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (2015) ("[A] court may construe an unjust enrichment claim as a quasi-contract claim."). These claims rest on "[c]ommon law principles of restitution [that] require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient." *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011). The elements of a quasi-contract or unjust enrichment claim are "(1) a defendant's receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's expense." *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017) (citing *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008)).

Whether Defendants received a benefit from those who purchased the Products that were allegedly mislabeled as "complete," and whether Defendants' retention of that benefit was unjust, are questions amenable to classwide resolution. Plaintiff alleges that consumers who purchased the Products were misled and defrauded. Therefore, whether Defendants retained the benefit of that alleged misconduct in the form of the revenues from the sales, is amenable to classwide resolution. For these reasons, common questions predominate as to Plaintiff's quasi-contract, unjust enrichment and restitution claims.

(f) Damages

The predominance requirement requires that when damages are sought on a common basis, they must be demonstrably calculable by common proof. However, the need for " 'damages calculations alone cannot defeat certification,' " *Levya v. Medline Indus., Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)), and such damages calculations need not be exact. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931)). Applying this principle, at the certification stage, a court must conduct a rigorous analysis to determine whether a plaintiff has provided (i) a competent damages model that matches his or her theory of liability and (ii) some reasonable basis to estimate damages. *See Comcast*, 569 U.S. at 35 (citing *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1224 (9th Cir. 1997)); *see e.g.*, *Levya*, 716 F.3d at 513-14; see *Zakaria v. Gerber Prods. Co.*, No. 2:15-CV-00200, 2017 WL 9512587, at *17-22 (C.D. Cal. Aug. 9,

2017); see *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2014 WL 7148923, at *14 (N.D. Cal. Dec. 15, 2014).

Plaintiff's model for calculating alleged damages relies on the testimony of two proffered expert witnesses -- Dennis and Dr. Kevin W. Caves ("Caves"). Dennis is a researcher and statistician who conducted a price premium survey as the basis to opine on whether the term "complete" on the Products' label "causes any market price premium to be paid by Class Members, and, if so, the amount of the price premium." Dkt. 114-18 ¶¶ 2-10, 16, 19.[6] Dennis's survey sampled a subset of adult consumers who had recently purchased children's multivitamins. *Id.* ¶¶ 26-28. He testified that he followed certain best practices in structuring the survey, including disguising the survey's objectives from participants and conducting "one-on-one cognitive interviews" to ensure that the survey questions were clear, unbiased and comprehensible. *Id.* ¶¶ 31-32, 38-43. The ultimate survey used the choice-based conjoint ("CBC") methodology, "a standard marketing research technique for quantifying consumer preferences for products," which presented each respondent with three different, randomly generated products and asked them to select one. *Id.* ¶¶ 51, 55, 62; *id.* at 28-29 (table depicting different attributes and options, or "levels," for those attributes); *id.* at 31 (depicting what a survey respondent might see). Based on the results of the survey, Dennis opined that the price premium caused by representing the Products as "complete" multivitamins was 22.99% for a 70-count bottle and 4.85% for a 180-count bottle. *Id.* ¶ 92. Dennis testified that the size of the premium did not vary across key consumer segments, including gender and age. *Id.* ¶ 99.

Caves is an economist who converted Dennis's estimated price premiums into aggregate, classwide damages by using sales data. Dkt. 114-13 ¶¶ 6-7, 21-23. Applying this approach, Caves calculated overall damages of $1.68 million. *Id.* ¶ 24. Caves also testified that the Dennis CBC survey was an appropriate method for measuring price premiums because it was responsibly designed and allowed Davis to disaggregate customers' valuation of different features of the Products. *Id.* ¶¶ 9-20.

Defendants argue that Plaintiff's damages model is unsupported for four reasons. *First*, Dennis's price premium cannot be accurate because Defendants did not change the prices of the Products after adding the "complete" descriptor and did not change the price of the Sour Multivitamin Supplement after removing the "complete" descriptor. Dkt. 127 at 28. *Second*, Dennis's survey produced irrational results, because the price premiums that Dennis found for all product attributes totaled 298% of the purchase price, showing that survey respondents were not responding in a realistic fashion. *Id. Third*, the "common" descriptor means different things to different consumers, making the attribution of an accurate price premium unattainable. *Id.* at 29. *Fourth*, Dennis's survey reflects unrealistic attributes that do not reflect marketplace conditions or attributes, which created a "focalism bias" for respondents on the issue whether a product contains all essential vitamins. *Id.*

Defendants' arguments are unpersuasive insofar as they concern whether Dennis's model is flawed on an overall basis. Thus, they go to the weight, not the admissibility of his testimony and methodology. Such issues are better addressed in the context of a motion to exclude Dennis's testimony, on a motion for summary judgment, or by the finder of fact if the matter were to proceed to trial. Moreover, although

[6] Dennis also conducted a separate consumer perceptions survey that addressed the issues of materiality and deception. For the reasons stated earlier, whether Dennis's survey supports findings of materiality and deception are issues that are more appropriately addressed based on a more complete factual record, *e.g.*, on a motion for summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-08525 JAK (JPRx) | Date | February 23, 2024 |
|---|---|---|---|
| Title | Camila Cabrera v. Bayer Healthcare LLC, et al. | | |

arguments that "b[ear] on the propriety of class certification" should not be set aside "simply because those arguments would also be pertinent to the merits determination," *Comcast*, 569 U.S. at 34. Defendants' contentions do not bear on the propriety of class certification because they raise alleged holistic problems with Dennis's model, and do not address issues of potential individualized determinations as to damages. Accordingly, Defendants' arguments fail to establish that Dennis's model of damages is unsupported for purposes of considering class certification. Further, there is sufficient support as to the expertise of Dennis as well as the appropriateness of his model for the calculation of alleged classwide damages based on alleged reliance on the "complete" labeling. Thus, the objections that have been raised go the weight, and not the admissibility of the opinions for purposes of considering class certification.

The outcome is difference to the extent Plaintiff seeks restitutionary damages on a classwide basis. Dennis has estimated a market price premium, which is a measure of what additional amount a buyer pays as a result of misrepresentations about product attributes. However, a market price premium only allows a finder of fact to determine the difference between the price paid for a product and what should have been paid based on the appropriate market value of a product. Although this metric captures actual damages, it does not provide all of the necessary elements of restitutionary damages, which require both a loss by the plaintiff and a corresponding gain by the defendant. *Zakaria*, 2017 WL 9512587, at *21 ("Under California law, restitution cannot be based solely on the money lost by the plaintiff if there is no showing of any corresponding gain by the defendant."). Dennis's model does not measure the latter amount. Therefore, it is sufficient only as to the claims for which Plaintiff may recover actual damages, and not those for which Plaintiff seeks restitution. Of Plaintiff's surviving claims, only the CLRA, express warranty, fraud/intentional misrepresentation and negligent misrepresentation claims can lead to actual damages. *Zakaria*, 2017 WL 9612587, at *18, 20-21 (CLRA, UCL, and FAL); *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 670 (C.D. Cal. 2009) (express warranty); *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995) (in bank) (intentional misrepresentation and negligent misrepresentation).

For these reasons, Plaintiff has proffered a sufficient damages model as to liability for actual damages, but not restitutionary relief.

b) Superiority

(1) <u>Legal Standards</u>

"Rule 23(b)(3) also requires that class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.' The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023; *Achziger v. IDS Prop. Cas. Ins. Co.*, 772 F. App'x 416, 419 (9th Cir. 2019). Matters pertinent to this inquiry include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id*.

(2) Application

A review of the applicable factors demonstrates that the superiority requirement is satisfied. *First*, because damages for each putative class member in this action are likely to be *de minimis*, class members are unlikely to have an interest in individually pursuing claims. *Second*, the parties have not identified any other litigation regarding the Products. *Third*, there is no showing that this District is particularly convenient or inconvenient for the adjudication of this action. *Fourth*, other than the aforementioned issues as to adequacy, typicality and predominance, there is no reason that this class action would be difficult to manage.

3. Fed. R. Civ. P. 23(b)(2) Requirements

To the extent that Plaintiff seeks class certification for injunctive relief, Fed. R. Civ. P. 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The parties do not dispute this requirement but instead disagree as to whether Plaintiff has individual standing to pursue injunctive relief. This argument is resolved by *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018).

*Davidson* arose in the context of a plaintiff's claim that the defendant had falsely advertised the "flushable" nature of its personal cleansing wipes. *Davidson*, 889 F.3d at 961. The plaintiff maintained that she had standing to pursue injunctive relief because she sought to continue purchasing the wipes but, going forward, had no reliable way of determining whether the wipes were flushable. *Id.* at 971. The Ninth Circuit concluded that these allegations were sufficient to establish standing to seek injunctive relief. *Id.* at 972. It held that for plaintiffs in consumer fraud cases, "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 969-70. It then explained that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase." *Id.* at 969.

The FAC alleges that, "[d]espite being deceived by Defendants, Ms. Woods wishes and is likely to continue purchasing complete multivitamin products in the future, including the Products, but only if they will contain all the vitamins." Dkt. 76 ¶ 11. It further alleges that, "[a]lthough Ms. Woods regularly visits stores where Defendants' multivitamins are sold, because she was deceived in the past by Defendants, absent an injunction, she will be unable to rely with confidence on Defendants' representations on the Product in the future and will therefore abstain from purchasing the Products, even though she would like to purchase them." *Id.* These allegations, which establish Plaintiff's "inability

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-08525 JAK (JPRx) | Date | February 23, 2024 |
| --- | --- | --- | --- |
| Title | Camila Cabrera v. Bayer Healthcare LLC, et al. | | |

to rely on the validity of the information advertised [by Defendants] despite her desire to purchase [the Products]," align Plaintiff's basis for standing with *Davidson*. 889 F.3d at 971.

Plaintiff's basis for standing, however, is distinct from that of the plaintiff in *Davidson*. There, the plaintiff's claim that she relied on the defendant's representation, but could not trust it, was plausible because she had "no way of determining whether the [product's] representation [] was in fact true." *Davidson*, 889 F.3d at 971. Here, on an ongoing basis Plaintiff does not need to rely on Defendants' representation about the Products' "complete" multivitamin status because she can independently verify the vitamins contained in the Products by reviewing the list of active ingredients on the labels. *See* Dkt. 76 ¶ 22 (images of "Supplement Facts" contained on back of Products' labels).[7] Because Plaintiff may avoid being misled in this way, she is unlikely to suffer the same injury again. For this reason, she lacks standing to pursue injunctive relief. *See, e.g.*, *Cordes v. Boulder Brands USA, Inc.*, No. 18-CV-6534 PSG, 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018) ("[N]ow that Plaintiff is on notice about potential underfilling, he could easily determine the number of pretzels in each package before making a future purchase by simply reading the back panel . . . [o]r, he could feel the bag."); *Matic v. United States Nutrition, Inc.*, No. 18-CV-09592-PSG, 2019 WL 3084335, at *8 (C.D. Cal. Mar. 27, 2019) ("Plaintiff is now aware that he can find out how much protein powder is in Defendant's containers by simply looking at the label."); *McGinty v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023) ("[W]hen, as here, a front label is ambiguous, the ambiguity can be resolved by reference to the back label.").

For these reasons, Plaintiff lacks standing to pursue injunctive relief on behalf of the putative classes. Therefore, certification is improper as to Plaintiff's proposed Rule 23(b)(2) injunctive relief class.

## IV. <u>Conclusion</u>

For the reasons stated in this Order, the Motion is **DENIED**; provided, however, this does not *per se* preclude a motion for leave to amend the FAC to proffer an alternative named plaintiff; and provided further that this recognition is not a statement as to whether such a motion would be appropriate or have merit.

The parties shall meet and confer with respect to a proposed, revised pretrial schedule in this matter. After doing so, within 30 days of the issuance of this Order, the parties shall file a joint report with their respective and/or collective positions as to these dates, and a completed Exhibit A - Schedule of Pretrial and Trial Dates, which can be found in the Standing Order on the Court's procedures and schedules page located at: http://www.cacd.uscourts.gov/honorable-john-kronstadt. The proposed dates shall include one for a settlement process. In light of the present rulings in this Order, the joint

[7] Plaintiff contends that "the back label does not clearly dispel consumer confusion" because it "lists multiple items" and therefore "rel[ies] on a reasonable consumer's lack of thorough scientific knowledge regarding essential vitamins to deduce that some essential vitamins are missing." Dkt. 222 at 2. However, in assessing whether Plaintiff has standing, the inquiry is not whether a reasonable person would be misled by the representations but whether Plaintiff would be misled by them again in the future. Through this litigation, it is reasonable to conclude that Plaintiff has become aware of the "essential vitamins" and whether all are present in the Product. Those claims align with her role a class representative. Therefore, Plaintiff is presumably capable of verifying Defendants' representations and avoiding future injury by checking whether the labels on the Products list all of the 13 essential vitamins.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-08525 JAK (JPRx) | Date | February 23, 2024 |
| Title | Camila Cabrera v. Bayer Healthcare LLC, et al. | | |

report shall also include their respective and/or collective positions as to whether a ruling is necessary on the pending Motion for Summary Judgment (Dkt. 142), Motion to Exclude Expert Testimony of J. Michael Dennis (Dkt. 143) and Motion to Exclude Testimony of Kevin Caves (Dkt. 144).

**IT IS SO ORDERED.**

________ : ________

Initials of Preparer pk